**Kim ENSLEY–GAINES,**
**Plaintiff–Appellant,**

v.

**Marvin RUNYON, Postmaster,**
**Defendant–Appellee.**

No. 95–1038.

United States Court of Appeals,
Sixth Circuit.

Argued June 4, 1996.

Decided Nov. 20, 1996.

Barbara M. Harvey (argued and briefed), Detroit, MI, for Plaintiff–Appellant.

Vanessa A. Miree, United States Postal Service, Office of Field Legal Service, Birmingham, MI, Elizabeth Larin, Asst. U.S. Attorney (argued and briefed), Detroit, MI, for Defendant–Appellee.

Mary Anne M. Helveston (briefed), Detroit, MI, for Amicus Curiae.

Before: MERRITT and COLE, Circuit Judges; ECHOLS, District Judge.*

ECHOLS, District Judge.

## I.

Plaintiff Kim Ensley–Gaines, an employee of the United States Postal Service, filed a formal complaint of discrimination with the Equal Employment Opportunity Commission ("EEOC") on September 26, 1991, claiming that the Postal Service discriminated against her in violation of Title VII of the Civil Rights Act of 1991, 42 U.S.C. §§ 2000e to 2000h–6, as amended by the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k), by refusing to grant her benefits available to temporarily disabled employees while she was pregnant. After conducting a hearing, an administrative law judge found that the Postal Service discriminated against her on the basis of her sex and pregnancy. The Postmaster General issued a final decision rejecting the administrative law judge's findings, and Plaintiff appealed the decision to the EEOC on December 4, 1992. The EEOC upheld the Postal Service's final decision in a written decision issued on June 30, 1993, and found that Plaintiff failed to prove discrimination by her employer.

Plaintiff filed the present action on August 11, 1993. At the completion of discovery, Defendant filed a motion for summary judg-

---

* The Honorable Robert L. Echols, United States District Judge for the Middle District of Tennessee, sitting by designation.

ment which the district court granted on December 28, 1994. On December 29, 1994, Plaintiff filed a timely notice of appeal. For the reasons stated herein, the judgment of the district court is hereby REVERSED and REMANDED to the district court for proceedings consistent with this opinion.

## II.

Within the Postal Service, there are several job functions know as "crafts," including mailhandlers and clerks. Plaintiff was employed within the mailhandler craft as a full-time, Level 4 career mailhandler at the Royal Oak, Michigan General Mail Facility assigned permanently to the mail cancelling operation. Her duties as a mailhandler included lifting and dumping trays of letters onto a conveyer belt, operating cancelling machines, rewrapping damaged mail, and performing other duties associated with the movement and processing of bulk mail.

Each craft is represented by its own union and labor agreement. As a mailhandler, Plaintiff was subject to a Collective Bargaining Agreement ("Agreement") between the Postal Service and the National Postal Mail Handler's Union, which governed the rights, duties, and responsibilities of the Postal Service and the employees covered by that Agreement. Under the Agreement, employees who are temporarily unable to perform their duties may submit written requests for alternative assignments.[1] Once such a request is submitted, supervisors are directed to "show the greatest consideration for ... employees requiring light duty or other assignments, giving each request careful atten-

tion, and reassign such employees to the extent possible in the employee's office."[2] Agreement, Art. 13.2.C.

Although Defendant recognizes that under the Agreement it must attempt to accommodate employees on temporary light-duty assignment, it asserts that it is under no obligation to provide a guaranteed number of work hours to such employees.[3] Defendant also asserts that not all employees temporarily unable to perform their duties are governed solely by the Agreement. In particular, Defendant points out that the Postal Service distinguishes between light duty and limited duty. "Limited duty" is available to those workers injured on the job, while "light duty" is available to employees whose injuries are not employment-related. Defendant asserts that its obligation to provide limited-duty assignments is based not on the Agreement but on the Federal Employee Compensation Act ("FECA"), 5 U.S.C. §§ 8101–8193, which provides compensation for employees who suffer employment-related injuries. Under this scheme, an employee with a job-related injury is entitled to compensation regardless of her or his ability to work, and, as such, employer agencies make every effort to find work within the limited-duty employee's restricted capabilities.

On July 3, 1991, Plaintiff requested full-time, temporary light-duty status under the Agreement due to medical limitations imposed by her doctor as a result of her pregnancy. In support of her request, Plaintiff submitted a medical statement from her physician. The limitations placed upon Plaintiff by her physician included a fifteen-pound

---

1. The pertinent provision of the Agreement states:

    [A]ny full-time regular or part-time flexible employee recuperating from a serious illness or injury and temporarily unable to perform the assigned duties may voluntarily submit a written request to the installation head for temporary assignment to a light duty or other assignment. The request shall be supported by a medical statement from a licensed physician[.]
    Agreement, Art. 13.2.A.

2. The Agreement also provides:
    Every effort shall be made to reassign the concerned employee within the employee's present craft or occupational group, even if such assignment reduces the number of hours

of work for the supplemental work force. After all efforts are exhausted in this area, consideration will be given to reassignment to another craft or occupational group within the same installation.
    Agreement, Art. 13.4.A.

3. The pertinent provision of the Agreement upon which Defendant relies provides:

    Light duty assignment may be established from part-time hours, to consist of 8 hours or less in a service day and 40 hours or less in a service week. The establishment of such assignment does not guarantee any hours to a part-time flexible employee.
    Agreement, Art. 13.3.B.

lifting restriction and a four-hour limit on standing and sitting. On August 2, 1991, Postmaster Daniel Presilla granted her a light-duty assignment for four hours a day.

Although admitting that her request for light-duty status was granted, Plaintiff complains that she was assigned to four hours of standing work only and not allowed to continue working while sitting down for the balance of the day so she could work a full eight-hour day. Plaintiff asserts that, had she been allowed to perform duties four hours each day while sitting, she then would have been able to work the other four by standing in the usual manner.[4] Therefore, Plaintiff claims that she was given light-duty status in name only because she was not permitted to sit while working, and after standing for the four hours allowed by her pregnancy restriction, she was sent home either on sick leave, annual leave, or without pay. According to Plaintiff, although she was granted light-duty status, Postmaster Presilla never intended to attempt in good faith to find a full day's work for her.

Plaintiff alleges that she and her union representative, Mary Misuraca, suggested a variety of tasks, both inside and outside of the mailhandler craft, that Plaintiff was qualified to perform and would be able to perform with the restrictions imposed upon her by her pregnancy. Plaintiff also contends that Ms. Misuraca recommended small accommodations to her work schedule and assignments that would have enabled Plaintiff to work eight hours per day without a disadvantage to other regular employees, but management ignored these suggestions.

In addition, Plaintiff identifies a number of nonpregnant, temporarily disabled mailhandlers who were treated more favorably than she was when requesting alternative duties. For instance, Plaintiff claims that, for at least three hours each evening as well as sporadically throughout the afternoon, full-time employees not on light-duty status were permitted to sit in chairs while sorting the mail. Furthermore, Plaintiff claims that Michael Clark, an employee on light-duty status with an identical fifteen-pound lifting restriction and a standing limitation of only two hours per day, was accommodated with sitting work on twelve of thirty actual workdays, or forty percent of the time.[5] Plaintiff also identified three mailhandlers assigned to limited-duty status because of on-the-job injuries who regularly received full-time work because of accommodations made by Defendant. Finally, Plaintiff claims that employees with other work restrictions were sometimes accommodated by reassigning those employees to positions in other crafts.

## III.

Under Title VII of the Civil Rights Act of 1991 ("Title VII"), 42 U.S.C. §§ 2000e to 2000h–6, an employer may not discriminate against an employee on the basis of the employee's gender. In *General Electric Co. v. Gilbert,* 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976), however, the United States Supreme Court ruled that discrimination on the basis of pregnancy did not violate the mandate of Title VII prohibiting discrimination on the basis of gender. *Id.* In 1978, Congress responded to the Supreme Court's decision in *Gilbert* by amending Title VII to include section 2000e(k). This section, referred to as the Pregnancy Discrimination Act ("PDA"), explicitly overrode the *Gilbert* decision by providing as follows:

> The terms "because of sex" or "on the basis of sex" include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and *women affected by pregnancy, childbirth or related medical conditions shall be treated the same for all employment-related purposes,* including receipt of benefits under firing benefit programs, *as other*

---

4. Plaintiff claims that from July 8, 1991, until October 4, 1991, when she took a maternity leave of absence, she received a total of 16.65 hours of sitting work.

5. Plaintiff admits that she was accommodated with some sitting work on 12 of the 41 actual workdays, or 29% of the time. In total, she received sitting time for 16.65 of the 328 hours that she was actually on duty, 5% percent of her on-duty time. By comparison, Michael Clark received 35.35 hours of sitting work for the 240 hours that he was on duty, or 15% of his on-duty time.

*persons not so affected but similar in their ability or inability to work.*

42 U.S.C. § 2000e(k) (1994) (emphasis added). Accordingly, the PDA transforms improper distinctions based on pregnancy or potential pregnancy into overt sex discrimination violative of Title VII. *Grant v. General Motors Corp.,* 908 F.2d 1303, 1307 (6th Cir.1990).

■ The Supreme Court also has established a clear framework for analyzing Title VII cases which may also be applied to those cases arising under the PDA. *See Asher v. Riser Foods, Inc.,* No. 92–3357, 1993 WL 94305, at *4 (6th Cir. March 30, 1993) (applying the test formulated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973) to a Title VII suit brought pursuant to the PDA). First, the plaintiff has the burden of proving a prima facie case of discrimination. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824; *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). The burden of production then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824; *Manzer v. Diamond Shamrock Chemicals Co.,* 29 F.3d 1078, 1082 (6th Cir.1994) (holding that once the plaintiff has made a prima facie case of racial discrimination, "the burden shifts to the defendant 'to rebut the presumption of discrimination by producing evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason' ") (quoting *Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094). If the defendant is able to articulate such a reason, the plaintiff then carries the burden of proving that reason to be a mere pretext for discrimination. *Id.*

■ To establish a prima facie case of discrimination under Title VII, the Plaintiff may prove her claim either through direct evidence, statistical proof, or the test established by the Supreme Court in *McDonnell Douglas.* The *McDonnell Douglas* test requires the Plaintiff to show: (1) she was a member of a protected class, (2) she suffered an adverse employment action, (3) she was qualified for the position she lost, and (4) she was replaced by someone outside the protected class. 411 U.S. at 802, 93 S.Ct. at 1824. The Plaintiff may also establish a prima facie case of discrimination by showing, in addition to the first three elements of the *McDonnell Douglas* analysis, that "a comparable non-protected person was treated better." *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582 (6th Cir.1992).

IV.

■ At the center of this appeal is the district court's determination that Plaintiff failed to establish that a comparable non-protected person received more favorable treatment because limited-duty employees were not similarly situated with light-duty employees. In arriving at this conclusion, the district court applied the principles enunciated by this Court in *Mitchell v. Toledo Hospital,* 964 F.2d 577 (6th Cir.1992). In *Mitchell,* this Court held that in order to demonstrate that a comparable, non-protected individual received more favorable treatment:

> the plaintiff must show that the "comparables" are similarly-situated in all respects. Thus, to be deemed "similarly-situated", the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them of it.

*Id.* at 583 (citations omitted). The district court also relied on this Court's decision in *Fields v. Bolger,* 723 F.2d 1216 (6th Cir. 1984). In *Fields,* this Court considered whether the plaintiff, a pregnant woman, had established a case of discrimination under Title VII when other employees with job-related injuries received more favorable treatment. *Id.* In rejecting the district court's finding of intentional discrimination, this Court found that the defendant, the Postal Service, had articulated a facially legitimate reason for its treatment of the plaintiff, namely that any disparate treatment

arose from the distinction between limited-duty employees and light-duty employees. *Id.* at 1220. This Court then concluded that the plaintiff had failed to prove that the defendant's actions were pretextual as she had introduced no evidence that any other employee with a non-job-related disability had received different treatment than the plaintiff.

In the present case, the district court found that, under the *Mitchell* test, commonly referred to as "the same supervisor test," the employees offered for comparison, namely limited-duty employees, were not similarly situated to Plaintiff, a light-duty employee. While finding that such employees were similar in the "physical conditions" of their employment, the district court concluded that they differed with respect to "the terms of employment." As such, the court concluded that Plaintiff failed to demonstrate that similarly situated employees received more favorable treatment. The district court also found that this Court's decision in *Fields* governed the current dispute and supported its finding that employees injured on the job were not similarly situated with employees who were not injured on the job but were temporarily unable to perform their duties due to serious illness or other injury.

■ As an initial matter, we note that *Fields* should not be read for the proposition that the issue of whether light-duty employees and limited-duty employees are similarly situated has been conclusively decided. First, *Fields* can be distinguished from the present case in several respects. Unlike the instant case, which is an appeal from summary judgment, the district court in *Fields* weighed the evidence presented at trial and concluded that the pregnant plaintiff had established a prima facie case of sex discrimination, and the articulated reasons stated for the action of the Postal Service, which had placed plaintiff on involuntary maternity leave, was pretextual. On appeal, this Court reversed and held the district court's finding of sex discrimination was not supported by substantial evidence and was clearly erroneous.

The distinction between employees who were injured on the job and those who sustained non-job-related disabilities was considered in *Fields* for the purpose of determining whether the defendant's reason for denying the plaintiff continued light-duty assignments due to her pregnancy was pretextual. In the present case, the district court drew a distinction between those employees injured on the job, assigned to limited duty, and those impaired because of non-job-related disability, assigned to light duty, for the purpose of determining whether the Plaintiff had carried her initial burden of demonstrating that "similarly situated employees" had received more favorable treatment. Furthermore, although the Postal Service continues to distinguish between limited-duty and light-duty employees, its internal policy in *Fields* was not the same as the Postal Service's current policy with respect to procedures and treatment of injured employees.[6] Plaintiff claims, however, that the Postal Service's current policy makes no relevant distinction under the PDA between the two categories of disabled employees. Also, in *Fields,* unlike in this case, the court found there was no evidence that the Postal Service's light-duty policy was applied differently to Plaintiff than any other employee with a non-job-related disability.

More importantly, even assuming that *Fields* could be read for the proposition that light-duty and limited-duty employees are not similarly situated, it does not control the current dispute because the facts upon which that decision was based occurred prior to the

---

**6.** Under the Postal Service's policy in *Fields,* employees who were injured on the job and those with non-job-related injuries or disabilities were both eligible to apply for "light duty." There was no limited-duty category. The Postal Service's policy, however, distinguished between the "on-the-job/off-the-job" disabled employees in its treatment of the employees once they applied for light duty. If the employee had been injured on the job, the Postal Service continued to pay the on-the-job-injured employee and continued to look for light-duty work assignments for said employee. Off-the-job disabled employees had to apply for light-duty work every day, and they were not paid if they did not work. Rather, such employees had to draw off their annual or sick leave or accept leave without pay. This is the same distinction made between limited-duty employees and light-duty employees in the present case.

enactment of the PDA and the court applied an analysis under Title VII only. While recognizing that discrimination on the basis of pregnancy constitutes sex discrimination, the district court did not apply the precise language of the PDA. *Id.* at 1219 n. 4 (recognizing that the PDA intended to be applied prospectively only).

When Congress enacted the PDA, instead of merely recognizing that discrimination on the basis of pregnancy constitutes unlawful sex discrimination under Title VII, it provided additional protection to those "women affected by pregnancy, childbirth or related medical conditions" by expressly requiring that employers provide the same treatment of such individuals as provided for "other persons not so affected but similar in their ability or inability to work." 42 U.S.C. § 2000e(k). As recognized by the United States Supreme Court, "[t]he second clause [of the PDA] could not be clearer: it mandates that pregnant employees 'shall be treated the same for all employment-related purposes' as nonpregnant employees *similarly situated with respect to their ability to work."* *Int'l Union v. Johnson Controls,* 499 U.S. 187, 204–05, 111 S.Ct. 1196, 1206, 113 L.Ed.2d 158 (1991) (emphasis added) (quoting *California Fed. Savings and Loan Ass'n. v. Guerra,* 479 U.S. 272, 297, 107 S.Ct. 683, 698, 93 L.Ed.2d 613 (1987) (White, J., dissenting)). As such, the PDA explicitly alters the analysis to be applied in pregnancy discrimination cases. While Title VII generally requires that a plaintiff demonstrate that the employee who received more favorable treatment be similarly situated "in all respects," *Mitchell,* 964 F.2d at 583, the PDA requires only that the employee be similar in his or her "ability or inability to work." 42 U.S.C. § 2000e(k).

Accordingly, when a Title VII litigant alleges discrimination on the basis of pregnancy in violation of the PDA, in order to establish a prima facie case of discrimination, she must demonstrate only that another employee who is similarly situated in her or his ability or inability to work received more favorable benefits. In addition, of course, she still must meet her burden of demonstrating that she is a member of the class to be protected by the PDA, that she was denied benefits, and that she was qualified to receive those benefits. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824. Likewise, this ruling does not alter the plaintiff's burden in rebutting any legitimate, nondiscriminatory reasons which may be offered by the defendant for its employment actions. Therefore, under the PDA, an individual employee alleging discrimination based upon pregnancy need not meet "the same supervisor test" as enunciated in *Mitchell,* but need only demonstrate that another employee who was similar in her or his ability or inability to work received the employment benefits denied to her.

In the present case, the district court erred in granting summary judgment to the Defendant by concluding that Plaintiff failed to establish a prima facie case of discrimination based on her pregnancy. The record reveals that Plaintiff presented evidence that a male on light duty received preferential treatment, as well as evidence that some other limited-duty and light-duty employees who were similarly situated to her in their ability or inability to work received more favorable treatment. There also was evidence to show that limited-duty and light-duty employees are similarly situated and differ only with respect to the fact that limited-duty employees are unable to perform their full duties because they have been injured on the job and light-duty employees are unable to perform their full duties because of a non-job-related injury or illness. While Defendant must continue to pay limited-duty employees regardless of whether they work, such a distinction pertains to the terms of employment, not to an employee's ability or inability to work, as provided in the PDA. Plaintiff also presented evidence that she was a member of a protected class; she suffered an adverse employment action; she was qualified for the position she lost; and a comparable non-protected person was treated better. Accordingly, Plaintiff has met the burden of establishing a prima facie case of discrimination under the PDA, and summary judgment in favor of the Defendant was inappropriate.

## V.

Defendant also contends that, even assuming that Plaintiff established a prima facie case of discrimination, the district court properly concluded that Defendant articulated a legitimate, nondiscriminatory reasons for its actions, which Plaintiff failed to rebut. For instance, Defendant contends that Plaintiff's supervisor did not assign her to positions in other crafts because he believed that such an action might violate the Agreement and subject him to a grievance. Defendant also asserts that Plaintiff was not allowed to sit on a stool while doing her work because this would pose a safety hazard in performing her job and would reduce efficiency.

Plaintiff has offered contrary evidence to show that Defendant's proffered reasons are inaccurate or pretextual. For instance, Plaintiff provided evidence that craft lines were crossed to accommodate some employees with temporary disabilities, and in fact, such considerations were part of the Agreement.[7] With respect to Defendant's allegation that Plaintiff was not permitted to use a stool due to safety concerns, Plaintiff provided evidence that any concern for safety was pretextual as other individuals were permitted to use stools and use of the stool did not pose any safety risks. As Plaintiff has provided evidence that Defendant's proffered reasons for its actions were false or pretextual, a reasonable trier of fact could infer that Defendant discriminated against Plaintiff. *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 511, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993) ("The factfinder's disbelief of the reasons put forward by the defendant ... may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons, will *permit* the trier of fact to infer the ultimate fact of intentional discrimination...."). The Court finds the existence of genuine issues of material facts concerning the alleged legitimate, nondiscriminatory reasons stated by the Defendant for its actions makes summary judgment inappropriate in this case.

## VI.

For the reasons stated herein, we find the district court erred in concluding that Plaintiff failed to establish a prima facie case of discrimination. Moreover, we find, at the very least, Plaintiff has established genuine issues of material fact concerning whether limited-duty employees and light-duty employees are similarly situated in their ability or inability to work, whether other light-duty employees and/or limited-duty employees received more favorable treatment than Plaintiff, and whether Defendant's articulated reasons for its actions were pretextual. We, therefore, REVERSE the district court's grant of summary judgment to Defendant. Therefore, the district court's decision is hereby VACATED, and the case is REMANDED to the district court for proceedings consistent with this opinion.

---

**7.** As noted above, the Agreement provides that supervisors should make an effort to find alternative work for light-duty employees and "consideration will be given to reassignment to another craft or occupational group within the same installation." Agreement, Art. 13.4.A.