Christine RACITI–HUR, Plaintiff,

v.

Donald D. HOMAN, in his capacity as Livingston County Sheriff, Kenneth Wright, in his capacity as Undersheriff of Livingston County, Livingston County, a public corporation, and the Livingston County Board of Commissioners, co-employer, jointly and severally, Defendants.

No. 97–CV–70197–DT.

United States District Court,
E.D. Michigan,
Southern Division.

Jan. 29, 1998.

Jamil Akhtar, Birmingham, MI, Patricia J. Battersby, Southfield, MI, for plaintiff.

S. Randall Field, Laura S. Amtsbuechler, Johnson, Rosati, Farmington Hills, MI, for defendants.

## MEMORANDUM OPINION AND ORDER

ZATKOFF, District Judge.

### I. INTRODUCTION

This matter is before the Court on Defendants' motion for summary judgment pursuant to Fed.R.Civ.P. 56. Plaintiff has filed a response, Defendants have replied. In addition, Defendants have filed a motion for sanctions, to which the Plaintiff has responded. The Court finds that the facts and legal arguments are adequately presented in the parties' briefs and the decisional process would not be significantly aided by oral argument. Therefore, pursuant to E.D.Mich.Local R. 7.1(e)(2), it is hereby ORDERED that the motion be resolved on the briefs submitted. For the reasons set forth below, Defendants' motion for summary judgment is granted and the motion for sanctions is denied.

### II. BACKGROUND

Plaintiff is a sheriff's deputy employed by the Livingston County Sheriff's Department. She began her employment as a road patrol officer on or about June 12, 1989. When Plaintiff began working as a deputy in 1989, the elected Sheriff at that time was Sheriff DeBurton. In 1992, Donald Homan was elected Sheriff and took office on January 1, 1993. Sheriff Homan's Undersheriff is Kenneth Wright. The Sheriff is responsible for promulgating the rules and regulations governing the operation of the Sheriff's Department.

In 1989, when the Plaintiff was hired, then Sheriff DeBurton had an unwritten policy of allowing deputies to be assigned "light duty" work when disabled from their road patrol duties. Thus, in 1992, when the Plaintiff was diagnosed with Bels Palsy, a condition causing partial facial muscle paralysis, she was assigned to the light-duty dispatcher position, but paid the wages of a road patrol

officer. Similarly, in late 1993 and early 1994, when Plaintiff became pregnant with her first child, Sheriff Homan continued Sheriff DeBurton's unwritten policy of assigning temporarily 'disabled' deputies to light duty work, and the Plaintiff was assigned to the dispatch unit during most of her pregnancy. During this time she was paid the higher wages of a road patrol officer. Other road patrol deputies with temporary disabilities were also allowed to work light duty jobs as well.

In October or November 1994, Sheriff Homan and Undersheriff Wright made the decision to discontinue entirely the unwritten policy and practice of allowing light duty assignments for any temporarily disabled deputy. This was communicated to the President of the deputies union, but each deputy was not individually notified (Plaintiff's Ex. 1, p. 22).

In February 1996, Plaintiff became aware that she was pregnant for the second time and requested that she be removed from road patrol duties and transferred to the dispatch unit, as she had been during her first pregnancy. Plaintiff was not medically disabled due to her pregnancy, nor were there any complications involved. Rather, as Plaintiff testified to at her deposition, she simply felt that it was not safe for her unborn child, her fellow officers, or for herself to be working road patrol during any time of her pregnancy (Defendants Ex. 5, p. 7). In addition, she believed all pregnant officers should be removed from the road as soon as they learn of their pregnancy (Defendants Ex. 5, p. 10–11).

After Plaintiff requested a light duty assignment upon learning of her pregnancy in February 1996, she was told that the policy of assigning deputies to light duty work at road patrol wages had been discontinued. Therefore, her options were to stay on the road, take medical leave, or work as a dispatcher during the duration of her pregnancy, if an opening existed, at dispatcher pay and benefits (approximately a $10,000 pay cut).

On April 26, 1996, Plaintiff wrote to the Undersheriff again requesting to be assigned to a dispatcher, or equivalent light duty, position without a loss of pay or benefits. The Undersheriff responded by informing the Plaintiff that there were no openings in dispatch, however, if one were to become available she would be considered for it at dispatcher pay and benefits.

On May 28, 1996, Plaintiff apparently met with the Undersheriff at which time she was offered a dispatcher position, at dispatcher salary, and a guarantee that after the birth of her child she would be returned to her position as a road patrol deputy.

On May 29, 1996, Plaintiff wrote to the Undersheriff tentatively accepting the offer presented at the May 28th meeting, and requested that it be put in writing. An agreement was subsequently drafted and a meeting was held between Plaintiff and Undersheriff Wright, at which the Plaintiff was presented with a written agreement for her signature. The agreement provided that: (1) Plaintiff would be assigned to dispatch at dispatch pay and benefits, (2) after her pregnancy she would be returned to her road patrol position with no loss of seniority, and (3) she would waive any legal claims arising out of her reassignment as a dispatcher.

The agreement was rejected by the Plaintiff at the meeting because she refused to waive any legal claims she may have had and because the agreement provided for her to be returned to deputy status upon her return from maternity leave, as opposed to upon her departure for maternity leave. Because Plaintiff would collect pay during maternity leave, whether she was classified as a dispatcher, or the higher paying job of road patrol deputy, apparently made a difference. Because Plaintiff rejected the agreement, she remained assigned to road patrol.

On June 5, 1996, Plaintiff wrote to the Undersheriff and advised him that she would be taking a medical leave of absence. Thereafter, on June 25, 1996, Plaintiff filed a complaint with the EEOC alleging discrimination.

On August 30, 1996, Plaintiff once again wrote to the Undersheriff requesting light duty work. According to the Plaintiff, Undersheriff Wright denied this renewed request and allegedly told her to "take the

matter up with the EEOC." However, Wright denies ever saying this.

Plaintiff gave birth to her child on October 3, 1996. On October 24, 1996, the EEOC issued a right to sue letter. On December 11, 1996, Plaintiff returned to work a deputy assigned to road patrol.

Plaintiff filed suit on January 6, 1997, alleging sex discrimination under Title VII, handicap discrimination under the Americans with Disabilities Act, retaliation, violation of equal protection, and various state law claims. This Court declined to exercise supplemental jurisdiction over Plaintiff's state law claims and ordered them dismissed. In addition, Plaintiff and Defendants have stipulated to the dismissal of Plaintiff's claim of handicap discrimination. Accordingly, the only claims remaining before the Court are Plaintiff's claims of sex discrimination, retaliation, and violation of equal protection.

## III.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only where no genuine issue of material fact remains to be decided and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A genuine issue of material fact exists when "there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted). In applying this standard, the Court "must view all materials offered in support of a motion for summary judgment, as well as all pleadings, depositions, answers to interrogatories, and admissions properly on file in the light most favorable to the non-moving party." *Id.* 106 S.Ct. at 2510. Where "the moving party has carried its burden under 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (footnote omitted); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

## IV.  OPINION

A.  Pregnancy Discrimination

Under Title VII, it is unlawful for an employer to discriminate against any individual with respect to compensation, terms, conditions or privileges of employment because of sex. 42 U.S.C. 2000e–2. The Pregnancy Discrimination Act amended Title VII, and provides that:

> The terms "because of sex" or "on the basis of sex" include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work....

42 U.S.C. § 2000e(k)

Thus, Plaintiff claims that the Defendants discriminated against her in violation of Title VII of the Civil Rights Act of 1991, 42 U.S.C. § 2000e *et seq.*, as amended by the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k) by refusing to grant her light duty work, at road patrol wages, which was allegedly available to other employees, while she was pregnant. The Defendants contend that after the light duty policy was discontinued in 1994, no other similarly situated deputies were allowed light duty for a temporary disability, thus, Plaintiff cannot establish a prima facie case of discrimination.

The Supreme Court has established a clear framework for analyzing Title VII cases, which is also applicable to cases arising under the Pregnancy Discrimination Act. *Ensley–Gaines v. Runyon*, 100 F.3d 1220, 1224 (6th Cir.1996). First, the Plaintiff has the burden of establishing a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). The burden then shifts to the Defendants to demonstrate a legitimate, non-discriminatory reason for their actions. *McDonnell Douglas Corp. v. Green*, 411 U.S.

at 802, 93 S.Ct. at 1824. Defendants' burden is merely one of production, not proof. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981). If the Defendants are able to articulate a legitimate reason, the burden shifts to the Plaintiff to establish by a preponderance of the evidence that the Defendants' stated reasons for their actions are not the true reasons and are merely pretext. *Id.* at 256, 101 S.Ct. 1089.

■ Plaintiff's claim is one of disparate treatment. Because Plaintiff has no direct evidence that she was discriminated against because of her pregnancy, under the current framework for deciding discrimination cases, in order for Plaintiff to prove that she was discriminated against due to her pregnancy she must come forward with evidence that demonstrates a prima facie case of discrimination. Plaintiff establishes a prima facie case if she can show by a preponderance of the evidence that:

> (1) she was a member of a protected class, (2) she suffered an adverse employment action, (3) she was qualified for the position she lost, and (4) she was replaced by someone outside the protected class.... [or] that "a comparable non-protected person was treated better."

*Ensley–Gaines v. Runyon,* 100 F.3d 1220, 1224 (6th Cir.1996) (internal citations omitted).

The Defendants contend that the Plaintiff cannot establish element number four and thus cannot establish a prima facie case. Specifically, Defendants argue that Plaintiff cannot show that comparable non-protected persons received more favorable treatment for the reason that after the light duty policy was discontinued in 1994, no other similarly situated deputies were allowed light duty work for a temporary disability. Therefore the Defendants argue, summary judgment is proper on Plaintiff's pregnancy discrimination claim. The Court agrees.

There is no evidence that Plaintiff was *medically* disabled from her duties as a road patrol officer. Her request for light duty work was based upon her concern for the safety of her unborn child, and her belief that she it was not safe for her to be working road patrol any time during her pregnancy. Nonetheless, the Court will assume, without deciding, that Plaintiff's pregnancy qualifies as a temporary medical disability.[1]

■ Therefore, pursuant to the Pregnancy Discrimination Act ("Act" or "PDA"), Plaintiff must establish that as a pregnant woman she was not treated the same as "other persons not so affected but similar in their ability or inability to work." 42 U.S.C. § 2000e(k). Plaintiff presents numerous facts which she claims supports a prima facie case of pregnancy discrimination, however, these facts do not establish that other persons similar in their ability or inability to work were treated differently from her.

Plaintiff's first argument in support of her claim is that another Officer, "as a result of an injury, was assigned to work the Detective Bureau performing paperwork tasks until he retired in 1995 or 1996." (Plaintiff's brief p. 9). However, Plaintiff fails to mention that this Officer was assigned to the Detective Bureau *prior* to Sheriff Homan taking office and *prior* to the discontinuance of the light-duty policy (Plaintiff's Ex. 2 p. 87, Ex. 3 p. 37). Accordingly, this argument offers no support for Plaintiff's claim that she was treated differently from others as it occurred before the discontinuance of the light duty policy.

■ Plaintiff next argues that after the light-duty policy was discontinued in 1994, Sheriff Homan "continued to accommodate disabled employees by transferring them to non-hazardous positions within the Sheriff['s] Department. For example, Corrections Officers Deering and Erdman had jobs created for them in the Corrections Unit, which would not require them to come into contact with prisoners." (Plaintiff's brief p. 9). First, Plaintiff mischaracterizes the testimony of several witnesses to formulate the quote above. The Corrections Officers were not assigned to light duty, nor were they transferred to another position due to a temporary disability, nor was a position created

---

1. Pregnancy is not considered a disability under the Americans with Disabilities Act, 42 U.S.C. § 12102; 29 C.F.R. § 1630.2(h); *Jessie v. Carter*   *Health Care Center, Inc.,* 926 F.Supp. 613, 616–17 (E.D.Ky.1996).

for them. Rather, the two officers (one female, one male) have permanent disabilities involving their legs which restrict some of their duties, however, they still perform Corrections Officer's work (Plaintiff's Ex. 2 p 86). Second, and more importantly, the Corrections Officers, as permanently disabled employees are not similar to Plaintiff in their ability or inability to work and are thus an inappropriate comparison.

Assuming Plaintiff's pregnancy is considered a temporary medical disability, then the comparable persons are other *temporarily* disabled deputes who were assigned to perform light duty work without a decrease in their wages. Plaintiff, however, contends the correct comparison is between herself and *any* deputy assigned light duty work due to a disability. Plaintiff presses this argument because she has absolutely no evidence whatsoever of temporarily disabled deputies who were treated differently from her, thus, she attempts to establish her prima facie case by comparing herself to the permanently disabled Corrections Officers. However, the Court finds such a comparison without merit.

Permanent medically disabled deputes, are not person's similar in their ability or inability to work in comparison to Plaintiff's temporary pregnancy. To compare Plaintiff's temporary "disability" with persons who are permanently medically disabled is inapposite and goes beyond that required by the Pregnancy Discrimination Act. The Act does not require that pregnant employees be treated more favorably than other employees. Employees who are permanently disabled and unable to perform certain duties are not comparable with the Plaintiff, who was able to perform her job as a road patrol officer but simply did not want to do so while pregnant. *See Ensley–Gaines v. Runyon,* 100 F.3d 1220, 1223 (6th Cir.1996) (plaintiff claiming pregnancy discrimination compared to non-pregnant, temporarily disabled mail-handlers); *Byrd v. Lakeshore Hospital,* 30 F.3d 1380, 1382 (11th Cir.1994) (PDA violated when pregnant employees are denied privileges afforded non-pregnant temporarily disabled employees.). The fact that Plaintiff continued to work as a road patrol deputy until June 1996, demonstrates that the Corrections Officers with whom she seeks to compare herself were not similar in their

ability or inability to work; the Corrections Officers were *unable* to perform certain duties because of permanent disabilities, whereas the Plaintiff was able to, and in fact did, continue to perform her duties as a road patrol officer. Thus, while Plaintiff was able to perform her job, she simply preferred not to, clearly a different situation from that of an employee permanently disabled and *unable* to perform certain duties due to a medical condition. Thus, any comparison by Plaintiff of her situation with that of Correction Officers Deering and Erdman in an attempt to establish a prima facie case is overbroad and unavailing.

■ Lastly, Plaintiff cites other facts which she claims supports a finding of a prima facie case of discrimination. These facts include: in 1995 she was removed from road patrol and placed in dispatch—but paid road patrol wages—while the department investigated allegations of driving misconduct; in 1992 when she was diagnosed with Bels palsy she was allowed to work dispatch by Sheriff DeBurton; in 1993 during her first pregnancy Sheriff Homan allowed her to work dispatch with no loss in pay; and, that when a dispatcher is absent or on leave road patrol officers sometimes fill in. However, these facts, taken either singly or together, do not evince that others were treated differently. The facts either predate the discontinuation of the light duty policy, or, simply do not reflect that others were treated more favorably, i.e., allowed light duty for a temporary disability when she was not.

It is clear that the Plaintiff would have preferred that the Defendant allow her light duty work during her pregnancy, at no loss of pay, in lieu of taking leave. However, it is also clear that the Defendant had no such policy in place after 1994, nor was required to have one. It is important to note that the inquiry in a pregnancy discrimination case is not whether the employer could have been more accommodating to its pregnant employees. Rather, all the law requires is that the employer treat its pregnant employees the same as others similar in their ability or inability to work. The PDA does not require an employer who does not provide light duty

work to other temporarily disabled employees to provide it for pregnant workers.

In the case at bar, there is no genuine issue of material fact concerning other persons similar in ability or inability to work treated differently than the Plaintiff. Accordingly, she cannot establish a prima facie case of pregnancy discrimination. Therefore, summary judgment is proper and her claim of pregnancy discrimination shall be dismissed.

B. Retaliation

■ Count III of Plaintiff's complaint alleges that the Defendants retaliated against the Plaintiff for having complained about the Defendants' alleged discriminatory employment practices. In order to set forth a claim of retaliation under Title VII, Plaintiff must prove that: (1) she engaged in protected activity, (2) the Defendants knew about the activity, (3) the Defendant took employment action that was adverse to the Plaintiff, and (4) there was a causal connection between the protected activity and the adverse employment action. *EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 860 (6th Cir.1997).

Count III of Plaintiff's complaint does not specifically identify in what way she was retaliated against. After reading through the Complaint, the only possible factual source for a claim of retaliation that the Court can ascertain is as follows:

27. On or about September 3, 1996, Plaintiff met with Defendant, Kenneth Wright, and requested accommodation ... and at that time, Defendant, Kenneth Wright, told Plaintiff that "[n]o, there is still nothing available. You have to take it up in your EEOC Complaint."

30. Upon her return to work on December 11, 1996 ... Defendants refused to inform Plaintiff as to when and under what conditions she would have to go through a re-training program, and who would be the training officer assigned to assist Plaintiff.

(Complaint ¶¶ 27, 30).

■ Although the Plaintiff does not specifically identify in her Complaint what the adverse action taken against her was, in her response on summary judgment, Plaintiff simply claims that Undersheriff Wright's statement to "take it up with the EEOC" is sufficient to establish a prima facie case of retaliation. The Court does not agree. At the time Plaintiff wrote the letter requesting light duty work—"on or about September 3, 1996"—she was already on medical leave, she had previously been denied dispatcher work at road patrol pay, and she had refused to take the dispatcher position at dispatcher pay. Assuming that Wright did in fact tell her to take up her renewed request for light duty work to the EEOC, the Court fails to see any adverse employment action present.

■ In addition, Plaintiff presents no evidence, and does not even discusses in her response, how the Defendants alleged refusal to inform her—upon her return to work—as to where and when her retraining was to take place constitutes adverse employment action. Thus, because Plaintiff has failed to present any evidence regarding adverse employment action taken against in connection with her filing a complaint with the EEOC, she cannot establish a prima facie case of retaliation. Accordingly, summary judgment is proper and that claim shall be dismissed.

C. Equal Protection and § 1983.

Count IV of Plaintiff's Complaint alleges a violation of 42 U.S.C. § 1983. Specifically, Plaintiff claims that the Defendants discriminated against her in violation of the Equal Protection Clause of the 14th Amendment to the United States Constitution.

■ Because the Plaintiff has no facts sufficient to create a question of fact as to disparate treatment and discriminatory intent in regards to her claim under Title VII and the Pregnancy Discrimination Act, it necessarily follows that her Equal Protection claim under § 1983 must fail as well. As the Sixth Circuit has stated:

A plaintiff who alleges disparate treatment by a state employer is bringing essentially the same claim under Title VII as under § 1983. If there is liability under Title VII, there should be liability under § 1983. Similarly, if there was no discriminatory intent, there cannot be liability under either Title VII, on a disparate treatment theory, or § 1983.

*Grano v. Dep't of Development,* 637 F.2d 1073, 1082 (6th Cir.1980).

### D. Sanctions

Pursuant to Fed.R.Civ.P. 11 and 28 U.S.C. § 1927, Defendants have filed a motion for sanctions claiming that the present suit was frivolous and vexatiously initiated. After reviewing the Complaint, the parties' briefs on summary judgment, and the briefs in connection with the motion for sanctions, the Court finds that this case does not warrant the imposition of sanctions. Accordingly, Defendants' motion is denied.

### V. CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED that Defendants' motion for summary judgment is GRANTED and Plaintiff's Complaint is DISMISSED. IT IS FURTHER ORDERED that Defendants' motion for sanctions is DENIED.

IT IS SO ORDERED.

### *JUDGMENT*

IT IS ORDERED AND ADJUDGED that pursuant to this Court's Order dated January 29, 1998, Plaintiff's case is DISMISSED.