**Angela M. SUMNER, et al., Plaintiffs,**

v.

**WAYNE COUNTY, et al., Defendants.**

**No. 99–71040.**

United States District Court,
E.D. Michigan,
Southern Division.

March 23, 2000.

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

COHN, District Judge.

## I.

This is a sex discrimination case on the basis of pregnancy under Title VII, 42 U.S.C. § 2000 *et seq.*, and Michigan's Elliott Larsen Civil Rights Act, M.C.L. § 37.2101 *et seq.* Plaintiff Angela Sumner, a/k/a Angela Dickens (Sumner), is suing her former employer, Defendant Wayne County Sheriff's Department (Sheriff's Department), Wayne County (the County), and Sheriff Robert A. Ficano in his official capacity (Ficano). Sumner, who worked as a probationary police officer in the Sheriff's Department, claims that unlike non-pregnant, temporarily disabled probationary employees, she was denied an extension on her probationary period, i.e. allowed to return to work to complete her probationary period following her pregnancy. Sumner's husband Fred Dickens, Jr. (Dickens) also has a derivative claim for loss of consortium.

Before the Court is defendants' motion to dismiss, or alternatively, for summary judgment, contending that (1) Sumner cannot establish a prima facie case of discrimination, (2) their legitimate reason for discharging Sumner was not pretextual, (3) the Sheriff's Department is an improper defendant because it is not a legal entity capable of being sued, and (4) any recovery by Sumner is limited because she failed to mitigate her damages.

For the reasons that follow, defendants' motion will be granted in part, and denied in part.

## II.

The undisputed material facts are as follows.[1]

---

1. The Plaintiff did not follow the Court's motion practice guidelines regarding material statements of facts not in dispute.

## A.

Sumner was hired as a police officer for the Sheriff's Department on June 16, 1997. Under the collective bargaining agreement (CBA) between the S.E.I.U. Union Local 502, and Wayne County, Sumner, as a newly hired police officer, was considered to be on probationary status for the first year of her employment, i.e. until June 16, 1998. Sumner satisfactorily performed her duties as a probationary police officer and after 11 months of probation, was evaluated as "above average" by her immediate supervisor, Sgt. Arelia Pendergrass (Pendergrass).

In August 1997, Sumner became pregnant. In April 1998, Sumner approached Commander Karen Kreyger (Kreyger), assigned to Police Discipline in the Executive Division, to discuss a possible accommodation in her probation period on account of her pregnancy. Sumner told Kreyger of her need to take time off work to give birth, and requested that her probationary period be extended, so that she could return to work and complete the remainder of her probation without being required to start a new one-year probationary period. Citing Article 28[2] of the CBA, Kreyger told Sumner that only employees with more than one year of service are allowed to take a leave of absence without pay, and that if she left before attaining such status, she would have to resign, reapply, and if accepted, complete another full year of probation.[3]

Sumner continued to work at the Sheriff's Department until May 6, 1998, when she began labor pains. She used sick leave for eight days, exhausting her available sick leave on May 19, 1998. She returned her police uniform on May 20, 1998, and gave birth to her baby on May 21, 1998. Sumner did not return to work after May 20, 1998. Wayne County completed a separation report on May 28, 1998

and on June 1, 1998, Sumner was informed that she was terminated.

## B.

Sumner filed a charge of sex discrimination with the Equal Employment Opportunity Commission (EEOC) on June 26, 1998. In response to the conciliation agreement negotiated by the EEOC, Wayne County offered to reinstate Sumner in a police officer position, at an increased salary, and offered to extend her probation two months and two days. Sumner rejected the offer and filed this action on March 4, 1999.

## III.

### A.

A motion to dismiss for failure to state a claim upon which relief may be granted tests the sufficiency of the allegations of the complaint. Fed.R.Civ.P. 12(b)(6). When analyzing a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), the Court must take the plaintiff's well-pleaded allegations as true. *Miree v. DeKalb County,* 433 U.S. 25, 27 n. 1, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977). "[W]hen an allegation is capable of more than one inference, it must be construed in the plaintiff's favor." *Sinay v. Lamson & Sessions Co.,* 948 F.2d 1037, 1039–40 (6th Cir.1991). "A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

### B.

Summary judgment, however, is appropriate when the moving party demonstrates that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter

---

**2.** Article 28 reads in pertinent part: "a regular employee with at least one year of service may be granted a leave of absence without pay upon prior approval by the Sheriff."

**3.** Around the same time Sumner had an identical conversation with Personnel Director, Betty Boyd.

of law." Fed.R.Civ.P. 56(c). There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *In re Dollar Corp.*, 25 F.3d 1320, 1323 (6th Cir.1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

### IV.

### A.

Under Title VII of the Civil Rights Act of 1964, it is unlawful for an employer to discriminate against any individual with respect to compensation, terms, conditions or privileges of employment because of sex. 42 U.S.C. § 2000e–2. In 1978, Title VII was amended to add 42 U.S.C. § 2000e(k), commonly referred to as the Pregnancy Discrimination Act, which provides as follows:

> The terms "because of sex" or "on the basis of sex" include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth or related medical conditions shall be treated the same for all employment related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work.

Similarly, discrimination on the basis of sex relative to pregnancy is specifically recognized in Michigan's Elliott–Larsen Civil Rights Act, M.C.L. § 37.2101 *et seq.* in Section 201(d):

> (d) "Sex" includes, but is not limited to, pregnancy, childbirth, or a medical condition related to pregnancy or childbirth that does not include nontheraputic

abortion not intended to save the life of the mother.

### B.

In cases such as the one here, where there is no direct evidence of discrimination, a plaintiff may rely on circumstantial evidence to establish a prima facie case of pregnancy discrimination using the test set forth by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

> The *McDonnell Douglas* test requires the Plaintiff to show: (1) she was a member of a protected class, (2) she suffered an adverse employment action, (3) she was qualified for the position she lost, and (4) she was replaced by someone outside the protected class ... [or] a comparable non-protected person was treated better.

*Ensley–Gaines v. Runyon*, 100 F.3d 1220, 1224 (6th Cir.1996).

If a plaintiff establishes a prima facie case of discrimination by circumstantial evidence, a presumption of unlawful discrimination arises. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). A defendant, however, can rebut this presumption by producing evidence that the action was taken "for a legitimate, nondiscriminatory reason." *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. "[T]he defendant need not persuade the court that it was actually motivated by the proffered reasons." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 510, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (citing *Burdine*, 450 U.S. at 254, 101 S.Ct. 1089). Although the defendant has the burden of production, at all times the burden of persuasion is on the plaintiff. *Id.* at 506–07, 113 S.Ct. 2742.

If the defendant rebuts the presumption, the plaintiff must show that the defendant's reasons were a pretext for discrimination and that the defendants intended to discriminate. *See Thurman v. Yellow*

*Freight Systems, Inc.,* 90 F.3d 1160, 1166 (6th Cir.1996).

### C.

Here, defendants argue that although Sumner was clearly a member of a protected class, her claim fails under the last three prongs of the McDonnell test. Specifically, defendants assert that: (1) Sumner did not suffer an adverse employment action because she voluntarily turned in her uniform prior to her termination, (2) Sumner was not qualified for her position because she did not report to work, and (3) the non-protected person that Sumner compares herself to, is not a similarly situated employee.

### 1.

■ Defendants arguments are without merit. Sumner clearly suffered an adverse employment action—she was discharged from her job for failing to report to work after experiencing labor pains, i.e. was "affected by pregnancy." In the same vein, Sumner was qualified for her position. Under *Cline v. Catholic Diocese of Toledo,* 206 F.3d 651 (6th Cir.2000), the proper inquiry regarding qualification is whether the plaintiff is "performing ... at a level which met [the] employer's legitimate expectations." *Id.* at 660–61. Without question Sumner was performing up to expectation—she was considered above average by her immediate supervisor. Her absence from work had to do with defendant's rebuttal, not Sumner's prima facie case. *Id.*

■ Finally, Richard Seely (Seely), to whom Sumner compares herself, is a similarly situated employee for purposes of establishing a prima facie case. Seely was a police officer at the Sheriff's Department, in his ninth month of his probationary year, when he suffered an injury while on duty. As a result of his injury, Seely was unable to work for ten weeks and was separated from employment with the Sheriff's Department. After recovering from his injury, Seely was permitted to return to work, and complete the remained of his probationary period, without the necessity of reapplying, and restarting a new probationary period.

Contrary to defendants' arguments, the distinction that Seely's temporary disability was as a result of an injury sustained on the job, while Sumner's was as a result of her pregnancy (presumably sustained while she was off-duty), is not material. The proper focus under the comparison prong is whether the employees are similar in their ability or inability to work, regardless of the source of the injury or illness. *See Ensley–Gaines,* 100 F.3d at 1226 ("the PDA requires only that the employee be similar in his or her 'ability or inability to work' ") (citing 42 U.S.C. § 2000e(k)). Since here, both Seely and Sumner were temporarily disabled while on probation, and only Seely was allowed to extend his probationary period, Sumner has sufficiently shown that a non-protected employee was treated better. *Compare with Raciti–Hur v. Homan,* 8 F.Supp.2d 958 (E.D.Mich.1998) (holding that employee temporarily disabled by pregnancy cannot be compared to permanently disabled employees for purposes of comparison prong), *aff'd* 181 F.3d 103 (6th Cir.1999) (unpublished).

In like fashion, defendants' contention that since Seely was eligible for workers' compensation benefits he was not similarly situated to Sumner is also unpersuasive because workers' compensation eligibility has nothing to do with differences in ability or inability to work. *See Ensley–Gaines,* 100 F.3d at 1226 (distinctions pertaining to terms of employment, as opposed to an employee's ability or inability to work, are not relevant to inquiry). As such, Sumner has established a prima facie case of discrimination.

### 2.

In rebuttal, defendants' only contention is that they were merely enforcing their workers' compensation policy, and their leave without pay policy, in a non-discriminatory way. However, defendants' reasoning fails under *Ensley–Gaines* since, as previously discussed, distinctions such as

on the job injuries versus off the job injuries are immaterial. Ultimately, defendants treated a similarly situated non-pregnant worker better than Sumner, in direct contravention of the Pregnancy Discrimination Act.[4] As such, summary judgment is denied on this issue and Sumner may proceed to trial.[5]

### V.

Defendants next argue that the Sheriff's Department has improperly been named as a party because it is not a legal entity capable of being sued.

■ As a result of Wayne County's status as a Home Rule Charter county, the legislative functions of the county is vested in the Wayne County Board of Commissioners. The Sheriff's Department is merely a department within the jurisdictional authority of Wayne County, and as such, is not legally separate from the county. M.C.L. § 45.501, *et seq.* Since a charter county is a body corporate capable of being sued, M.C.L. § 45.501, Wayne County is a proper defendant, but the Sheriff's Department is not. Furthermore, Ficano, since he is being sued in his official capacity, is also a proper defendant. *See Owens v. Rush,* 636 F.2d 283 (10th Cir.1980). Accordingly, the Sheriff's Department should be dismissed as a defendant.

### VI.

Defendants finally contend that, in the event that defendants are liable, Sumner's damages are limited because defendants made Sumner an unconditional offer to return to work, which she declined.

### A.

■ It is well established that a discharged employee has a duty to mitigate damages. *See Ford Motor Co. v. EEOC,* 458 U.S. 219, 102 S.Ct. 3057, 73 L.Ed.2d 721 (1982). Under Title VII, the duty to mitigate has been codified at 42 U.S.C. § 2000e–5(g)(1) which states: "Interim

earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable." If an employer makes an unconditional offer of employment to the employee, the employee may be limited in the amount of back pay recoverable, if the employee unreasonably rejected the offer. *See Rasheed v. Chrysler Corp.,* 445 Mich. 109, 132, 517 N.W.2d 19 (1994) (an employer's unconditional offer of employment operates to creates a rebuttable presumption that the employee's rejection of such offer was unreasonable. The employee must then offer evidence of the reasonableness of the rejection.); *see also Ahmad v. Loyal Am. Life Ins. Co.,* 767 F.Supp. 1114 (S.D.Ala. 1991). The reasonableness of a rejection is a question of fact. *Id.*

■ However, here, the letter containing the purported offer of employment arose in the context of conciliatory efforts by the EEOC. Under 42 U.S.C.2000e–5, "[n]othing said or done during and as a part of ... informal endeavors [on the part of the EEOC] may be made public by the Commission, its officers or employees, or used as evidence in a subsequent proceeding without the written consent of the persons concerned." Although the EEOC, its agents and employees are prohibited from disclosing information obtained through its investigation and conciliation efforts, *see EEOC v. Associated Dry Goods,* 449 U.S. 590, 101 S.Ct. 817, 66 L.Ed.2d 762 (1981), Sumner has proffered no evidence to indicate that defendants also have such an obligation. However, on its face, section 2000e–5 provides that such information cannot be used as evidence in subsequent proceedings without each party's consent. Defendants have offered no evidence of Sumner's consent, so the letter cannot be used as evidence at trial.

---

**4.** Liability under Elliott–Larsen generally mirrors Title VII. *Lytle v. Malady,* 456 Mich. 1, 566 N.W.2d 582 (1997).

**5.** Dickens' derivative claim survives as well.

## B.

Moreover, the offer of employment was not unconditional. The letter from Charles H. Neal of the Wayne County Personnel Department, to EEOC investigator Barbara Cooper, dated October 6, 1998, in pertinent part begins as follows: *"In response to the conciliation agreement* on September 17, 1998, the County is willing to provide Ms. Sumner with a police officer position ..." (emphasis added). Taking the words at face value, this offer was made as part of an agreement negotiated by the EEOC. Thus, it carried an implied condition that Sumner would drop her discrimination charges against defendants in consideration of the offer. *See Ahmad,* 767 F.Supp. at 1117–20 (offer of reinstatement considered unconditional when there was no indication that it was conditioned on dropping EEOC complaint). As such, this was not an unconditional offer of employment.

Given that the letter is inadmissible evidence, the trier of fact will be unable to consider the letter in any decision.

## VII.

Since the Court considered evidence beyond Sumner's complaint, defendants' motion is treated as a motion for summary judgment. For the reasons stated above, the motion is GRANTED IN PART AND DENIED IN PART. The Sheriff's Department is DISMISSED from the case as a defendant.

SO ORDERED.