Jina DAVIDSON, Plaintiff,

v.

FRANCISCAN HEALTH SYSTEM OF the OHIO VALLEY, INC., Defendant.

No. C–3–98–322.

United States District Court, S.D. Ohio, Western Division.

Jan. 20, 2000.

Joanne J Ervin, Dayton, OH, for plaintiff.

Darryl M Kates, Dinsmore & Shohl—1, Cincinnati, OH, Jeffrey Scott Shoskin, Dinsmore & Shohl—1, Cincinnati, OH, for defendant.

## I. INTRODUCTION

MARBLEY, District Judge.

This matter is before the Court on the Defendant's, Franciscan Health System of the Ohio Valley, Inc.,[1] Motion for Sum-

---

1. Franciscan Health System of the Ohio Valley, Inc. is the successor in interest of St. Elizabeth Medical Center. St. Elizabeth's is

mary Judgment. The Plaintiff, Jina Davidson, brought suit under the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k), ("PDA"), after she was terminated from her nursing position for exceeding twenty-six weeks of leave under the Defendant's medical leave policy. For the following reasons, the Court hereby **GRANTS** the Defendant's Motion for Summary Judgment.

## II. FACTS

The facts in this case are undisputed. The Plaintiff was a registered nurse at St. Elizabeth's Medical Center in Dayton, Ohio. On September 13, 1995, the Plaintiff was terminated after exceeding twenty-six weeks of leave permitted by the Defendant's medical leave policy. The Plaintiff was pregnant on the date that she was terminated.[2]

The Defendant's leave policy permits employees with qualifying conditions, including pregnancy, to take up to twenty-six weeks of leave within a rolling twelve month period. The twenty-six weeks is broken down into twelve weeks of leave under the Family Medical Leave Act ("FMLA"), and fourteen weeks of leave under the Defendant's Extended Medical Leave Policy.

On March 30, 1995, the Plaintiff, who was pregnant with triplets, applied for leave. On April 3, 1995, the Plaintiff received a letter stating that her pregnancy qualified as FMLA leave. The Plaintiff received a second letter on June 9, 1995, stating that she had exhausted her FMLA leave and was being placed on Extended Medical Leave. On September 22, 1995, the Plaintiff received a letter stating that she had exhausted all of her medical leave and was being terminated. The Plaintiff gave birth to three daughters on October 16, 1995.

now doing business as Franciscan Medical Center–Dayton Campus.

## III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "[i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." FED. R.CIV.P. 56(c). The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.,* 12 F.3d 1382, 1388–89 (6th Cir.1993). In response, the nonmoving party must present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.,* 8 F.3d 335, 339–40 (6th Cir.1993). "[S]ummary judgment will not lie if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (concluding that summary judgment is appropriate when the evidence could not lead the trier of fact to find for the non-moving party).

In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient; there must be evidence on which the

**2.** The Plaintiff had successfully given birth two years earlier while employed by the Defendant, under the same leave policy.

jury could reasonably find for the non-moving party. *See Anderson*, 477 U.S. at 251, 106 S.Ct. 2505; *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir.1995).

## IV. DISCUSSION

The Pregnancy Discrimination Act provides:

> The terms "because of sex" or "on the basis of sex" include, but are not limited to, because of or on the basis of pregnancy, childbirth or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions *shall be treated the same for all employment-related purposes*, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work ...

42 U.S.C. § 2000e(k) (emphasis added).[3]

■ There are three ways to demonstrate pregnancy discrimination under the PDA: (1) by presenting direct evidence of discrimination; (2) by showing statistical evidence of disparate treatment or impact, and finally; (3) by establishing an indirect case of discrimination under *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Raciti–Hur v. Homan*, No. 98–1218, 1999 WL 331650, *2, 1999 U.S.App. LEXIS 9551, at *7 (6th Cir. May 13, 1999); *Fannon v. AAP St. Mary's Corp.*, No. 96–3506, 1997 WL 560058, * , 1997 U.S.App. LEXIS 23776, at *5–*6 (6th Cir. Sept. 5, 1997). Here, the Plaintiff argues that hers is a case of direct discrimination, indirect discrimination and disparate impact under the PDA.

## A. Direct Evidence of Discrimination.

■ A plaintiff may bring a claim of direct evidence of pregnancy discrimination under the PDA. Direct evidence is "[t]hat evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn v. Schering Plough Healthcare Prod. Sales Corp.*, 176 F.3d 921, 926 (6th Cir.1999); *Smith v. Chrysler Corp.*, 155 F.3d 799, 805 (6th Cir.1998) (finding that direct evidence in a disability case will be similar to an employer stating that "I fired you because you are disabled."). If the plaintiff establishes such direct evidence, the burden shifts to the employer to show that it would have taken the adverse employment action even if it had not been motivated by discrimination. *Jacklyn*, 176 F.3d at 926 (citations omitted); *Manzer v. Diamond Shamrock Chem. Co.*, 29 F.3d 1078, 1081 (6th Cir. 1994) (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 244–45, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989)).

The Plaintiff argues that there is direct evidence of discrimination in that the Defendant knew that she was pregnant, she was terminated while she was pregnant, and she was terminated because of her pregnancy. In its Reply, the Defendant argues that the Plaintiff's "direct evidence" is not really direct evidence because the Plaintiff has been unable to bring forward any evidence showing that she was terminated because of her pregnancy, instead of being terminated because of her violation of the Defendant's leave policy.

The Court agrees with the Defendant. The Plaintiff has not presented direct evidence of discrimination. Just because the Defendant knew that the Plaintiff was

---

**3.** Although not binding, the Federal Regulations offer some guidance:

> Disabilities caused or contributed to by pregnancy, childbirth, or related medical conditions, for all job-related purposes, shall be treated the same as disabilities caused or contributed to other medical conditions, under any health or disability insurance of sick leave plan available in connection with employment. Written or unwritten employment policies and practices involving matters such as the commencement or duration of leave, ... [and] reinstatement ... shall be applied to disability due to pregnancy ... on the same terms and conditions as they are applied to other disabilities.

29 C.F.R. § 1604.10(b).

pregnant when they fired her, does not, *ipso facto,* demonstrate that the Plaintiff was fired because she was pregnant. The Plaintiff's evidence is, at most, circumstantial or indirect evidence of discrimination.

## B. Indirect Evidence of Discrimination.

 A prima facie case of indirect discrimination under the PDA differs slightly from a prima facie case of discrimination under Title VII, 42 U.S.C. § 2000e. To establish a prima facie case of pregnancy discrimination without direct evidence, a plaintiff must demonstrate that: (1) she was pregnant; (2) she suffered an adverse employment action; (3) she was qualified for the position; and (4) she was replaced by an individual who was not a member of the protected class, or that a comparable non-protected person was treated better. *See Raciti–Hur,* 1999 WL 331650, *3, 1999 U.S.App. LEXIS 9551, at *8. Under the PDA, the comparable person need not be similarly situated in all respects, but need only be "similar in his or her 'ability or inability to work.'" *Id.* at *3, 1999 U.S.App. LEXIS 9551, at *9 (quoting *Ensley–Gaines v. Runyon,* 100 F.3d 1220, 1226 (6th Cir.1996)). Unlike other plaintiffs, the pregnant employee does not have to meet the "same supervisor" test established by *Mitchell v. Toledo Hospital,* 964 F.2d 577, 583 (6th Cir.1992). *Raciti–Hur,* 1999 WL 331650, at *3–*4, 1999 U.S.App. LEXIS at *9–*10 (finding that a plaintiff "need only demonstrate that another employee who was similar in her or his ability to work received the employment benefits denied to her.") (citing *Ensley–Gaines,* 100 F.3d at 1226).

Once the plaintiff establishes her prima facie case, the burden shifts to the employer to articulate a legitimate non-discriminatory reason for the adverse employment action. If the defendant meets its burden, the burden shifts back to the plaintiff to show that the defendant's reason was but a pretext for unlawful discrimination. *See Raciti–Hur,* 1999 WL 331650, *3, 1999 U.S.App. LEXIS 9551, at *8.

Here, the Defendant argues that the Plaintiff has not established a prima facie case of pregnancy discrimination because she has not demonstrated the fourth element of her claim: that another employee who was similarly situated in his or her ability to do work received more favorable treatment. The Defendant further points out that the Plaintiff was not replaced but that her position was eliminated and other employees were assigned her duties.

The Plaintiff argues that she can meet the fourth element of her prima facie case by showing that she was replaced by a non-pregnant female. Using the alternative method to meet her prima facie burden for the fourth element, the Plaintiff provides two comparables but does not know if those comparables exceeded their twenty-six week allotment for medical leave.

 In this case, Plaintiff has established that: (1) she was pregnant; (2) she was discharged; and that (3) she was qualified for the position. The Court finds, however, that the Plaintiff does not meet the fourth element of her prima facie case. She has failed to show either that she was replaced by an individual who was not a member of the protected class, or that a comparable non-protected person was treated better. First, when the Plaintiff took medical leave, the Plaintiff's job was eliminated and she was not replaced; rather, two part-time nurses assumed the Plaintiff's duties.

The Plaintiff also has not proved that a comparable non-protected person was treated better. There were twenty-two individuals who were terminated, as the Plaintiff was, for exceeding twenty-six weeks of leave. The Plaintiff was unable to present either a man or a non-pregnant woman who exceeded twenty-six weeks and was still employed by the Defendant. Furthermore, of the twenty-one women terminated, none was on medical leave because of pregnancy. The Plaintiff cannot establish a prima facie case because she

cannot establish the fourth element of her claim under either method.

In *Honegger v. Wickes Furniture Company*, No. 94 C 1584, 1995 WL 625196, at *7, 1995 U.S.Dist. LEXIS 15620, at *21 (E.D.Ill. Oct. 23, 1995), the court granted summary judgment to the defendant-employer on a claim of pregnancy discrimination under the PDA, where the defendant refused to return the plaintiff to her former position of employment when she returned from pregnancy leave. In *Honegger*, the plaintiff informed the defendant in March, 1992, that she would not be able to work past the twentieth week of her pregnancy. The defendant had a company-wide medical leave policy where all employees, pregnant and non-pregnant alike, were entitled to thirty calendar days off in a given year. After thirty days, the defendant did not guarantee that an employee's job would be held open for him or her. If an employee exceeded thirty days of leave, and his or her position was filled by another individual during that time, he or she would be offered the next available position. *See id.* at *3–*4, 1995 U.S.Dist.LEXIS 15620, at *13–*14.

In *Honegger*, the plaintiff's last day of work was March 31, 1992, and she gave birth on July 27, 1992.[4] On August 6, 1992, the plaintiff contacted the defendant and asked if she could tack on three weeks of vacation time to the end of her disability leave. At that time, the defendant informed the plaintiff that her old position had been filled and that they did not know if or when they would have a new position for her. At the end of her extended leave, the defendant did not return the plaintiff to her former position. The defendant did, however, rehire plaintiff at another location at a later date. *See id.* at *2–*3, 1995 U.S.Dist.LEXIS 15620, at *3–*5.

The court found that the defendant had established a legitimate non-discriminatory reason for terminating the plaintiff, in that "[d]efendant did not deviate from its established, written policy with regard to disability leave ..." *Id.* at *5, 1995

U.S.Dist.LEXIS 15620, at *17. The court granted summary judgment to the defendant.

Here, assuming that the Plaintiff had established a prima facie case, the Court finds that the Defendant has articulated a legitimate non-discriminatory reason for terminating the Plaintiff. As the employee did in *Honegger*, the Plaintiff in this case exceeded the time allotted by the Defendant's facially neutral leave policy. The Plaintiff in this case was treated "the same for all employment related purposes," 42 U.S.C. § 2000e(k), and was not terminated because of her pregnancy. Instead, the Plaintiff was terminated after she exhausted her employer's leave policy—as any other employee would have been. The court found in *Honegger* that the PDA "[d]oes not, as Plaintiff appears to suggest, require that the Defendant make an exception to its established, non-discriminatory leave policy in order to accommodate her because she had a high risk pregnancy." *Honegger*, 1995 WL 625196, at *7, 1995 U.S.Dist. LEXIS 15620, at *21 (citing *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 738 (7th Cir.1994)); *see also Soodman v. Wildman, Harrold, Allen & Dixon*, No. 95–C–3834, 1997 WL 106257, at *9, 1997 U.S.Dist. LEXIS 1495, at *31 (N.D.Ill. Feb. 10, 1997) (finding that "[a]n employer must ignore an employee's pregnancy but not her absence from work, unless like absences of nonpregnant employees go unheeded.") (citations omitted). The Court finds that the Defendant established a legitimate non-discriminatory reason for terminating the Plaintiff.

The Plaintiff argues that the PDA is a floor but not a ceiling, and that the Defendant could have done more for her, given her high risk pregnancy, than the statute requires. The Plaintiff makes a strong argument. Although the Plaintiff's termination does not violate the letter of the PDA, a colorable argument can be made that it vitiates the spirit of the Act. The Plaintiff was, at all times relevant, preg-

---

4. In total, the plaintiff was off from work for approximately twenty weeks.

nant. The Plaintiff was pregnant when her leave began, and when she was terminated from her position with the Defendant. If the PDA should protect anyone, it should protect a pregnant woman. As the Plaintiff argues, she would not have been terminated if she were not pregnant, since she would not have been out on an extended leave. The Defendant's neutral reason for terminating the Plaintiff, that she exceeded her medical leave, barely masks the underlying reason for why the Plaintiff took medical leave in the first place. It is a strange twist in the law that the PDA cannot protect a pregnant woman, who is otherwise an excellent employee, from being terminated from her position while she is pregnant, and taking a leave of absence because of that pregnancy.

■ The case law and the statute are clear—the PDA does not require that employers treat pregnant employees more favorably. *See* 42 U.S.C. § 2000e(k); *International Union v. Johnson Controls*, 499 U.S. 187, 204–05, 111 S.Ct. 1196, 113 L.Ed.2d 158 (1991); *Rhett v. Carnegie Ctr. Assocs. (In re Carnegie Ctr. Assocs.)*, 129 F.3d 290, 295 (3d Cir.1997); *Ensley–Gaines v. Runyon*, 100 F.3d 1220, 1223–24 (6th Cir.1996); *Okoroji v. District of Columbia*, No. 94–1442, 1998 U.S.Dist. LEXIS 10704, at *25 (D.D.C. July 8, 1998) (high risk pregnancy), *aff'd*, No. 98–7155, 1999 WL 151158, 1999 U.S.App. LEXIS 4002 (D.C.Cir. Feb. 2, 1999); *Cohn v. Integra Fin. Corp.*, No. 96–247, 1996 WL 648427, 1996 U.S.Dist. LEXIS 16405, at *20 n. 5 (E.D.Pa. Oct. 31, 1996) (high risk pregnancy). Based on these cases, the Court finds that the Plaintiff has not met her prima facie burden, and even if she had, that the Defendant has provided a legitimate non-discriminatory reason for terminating the Plaintiff. The Court finds, therefore, that the Plaintiff has not established a case of indirect discrimination under the PDA.

## C. Disparate Impact.

■ To establish a prima facie case of disparate impact, "[a] plaintiff must demonstrate 'that a specific employment practice or policy caused a significant disparate impact on a protected group,' in this case, pregnant women." *Fannon v. AAP St. Mary's Corp.*, No. 96–3506, 1997 WL 560058, at *2–*3, 1997 U.S.App. LEXIS 23776, at *5–*6 (6th Cir. May 13, 1999) (quoting *Hartsel v. Keys*, 87 F.3d 795, 801–02 n. 4 (6th Cir.1996)). In this type of case a plaintiff must provide " 'statistical evidence of systematic discrimination (i.e. a pattern or practice which results in discrimination).' " *Fannon*, 1997 WL 560058, at *3, 1997 U.S.App. LEXIS 23776, at *6 (quoting *Huguley v. General Motors Corp.*, 52 F.3d 1364, 1370 (6th Cir.1995)).

In *Fannon*, the court affirmed the granting of summary judgment to the employer on the plaintiff's disparate impact PDA claim after she was terminated from her position. 1997 WL 560058, at *3, 1997 U.S.App. LEXIS 23776, at *7. The employer in *Fannon* had a no-fault attendance policy which gave an employee one demerit for each absence regardless of its cause. If an employee accumulated six demerits, he or she was terminated. By February 1993, the pregnant plaintiff had five demerits unrelated to her pregnancy. On March 21, 1993, the plaintiff went to the hospital for a complication that was related to her pregnancy. Because of this sixth absence, the plaintiff received her final demerit and was discharged. In dismissing the plaintiff's disparate impact claim on summary judgment, the court relied on the fact that at least six other women were able to give birth under the employer's no-fault policy. *See id.* at *3, 1997 U.S.App.LEXIS 23776, at *7.

■ For the present disparate impact claim, the Plaintiff argues that from December 28, 1994, to December 28, 1996, only women have been terminated under the Defendant's leave policy. In response, the Defendant argues that the Plaintiff's statistics do not establish a claim of disparate impact. In total, twenty-one women and one man were terminated for exceeding six months of leave. However, not one

of the twenty-one women who were terminated were on medical leave due to pregnancy.[5]

In this case the Plaintiff has failed to show that the Defendant's leave policy had a disparate impact on pregnant women. At first glance, the Defendant's policy appears disproportionately to impact women. The Plaintiff did not adduce evidence, however, to show that terminating twenty-one women, out of twenty-two terminations in total, in a work force comprised of approximately eighty percent women, was statistically significant. Second, and more importantly, the Plaintiff could not demonstrate that the Defendant's policy disproportionately impacted *pregnant* women, the protected class at issue in this suit. Not one of the twenty-two individuals terminated for exceeding the Defendant's leave allotment were on leave because of pregnancy. As in *Fannon*, where six other women were able to give birth under the defendant-employer's no-fault attendance policy, here, no other pregnant women have been terminated for exceeding twenty-six weeks of leave. In fact, the Plaintiff in this case had successfully given birth two years earlier while employed by the Defendant. Based on all of this evidence, the Plaintiff has not established a claim of disparate impact under the PDA.

## V. CONCLUSION

The Plaintiff has not provided evidence that would establish that the Defendant violated the PDA under any of the three viable theories of discrimination—direct evidence, indirect evidence, or disparate impact. Based on the foregoing reasons, the Defendant's Motion for Summary Judgment is hereby **GRANTED**.

**IT IS SO ORDERED.**

5. The work force was approximately 80% female.