**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0222n.06
Filed: April 24, 2008

**No. 07-3485**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| OMRAN ABDUL-KHALIQ, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| CITY OF NEWARK, ERIC COOK, | ) | SOUTHERN DISTRICT OF OHIO |
| ARTHUR MINTON, and KYLE GROSS, | ) | |
| | ) | |
| Defendants-Appellees. | | |

Before: BOGGS, Chief Circuit Judge; ROGERS, Circuit Judge; SHADUR, District Judge.[*]

**ROGERS,** Circuit Judge.  Plaintiff-Appellant Omran Abdul-Khaliq appeals the district court's grant of summary judgment in favor of the defendants in this § 1983 action against the City of Newark and three individual police officers for selective prosecution, unreasonable seizure, malicious prosecution, and excessive use of force.  Khaliq's claims arise out of an incident during which three officers arrested Khaliq outside of his home for disorderly conduct after he yelled and cursed at the officers and either opened or raised his coat in a potentially threatening manner. Because Khaliq has presented no genuine issue of material fact as to any of his federal claims, we affirm the district court's grant of summary judgment.

_____

[*]The Honorable Milton I. Shadur, United States District Judge for the Northern District of Illinois, sitting by designation.

Abdul-Khaliq is an African-American Muslim who lives with his white girlfriend, Melinda Fairburn. In March 2003, upon returning home and discovering four armed men demanding money from his girlfriend, Khaliq dialed 911. According to Khaliq, he informed the Newark Police Dispatch that "[a] guy just had my kid and girlfriend held by gunpoint." The dispatch interpreted this as a child abduction report, and sent Officers Kyle Gross, Arthur Minton, and Eric Cook to respond. Meanwhile, Khaliq drove off in pursuit of the invaders.

Upon arriving at the scene, Officer Gross observed Khaliq's neighbor, Naomi Wilder, standing in the street. He asked if she had witnessed a child abduction. Ms. Wilder stated that she had not, but that she had overheard Ms. Fairburn ask Khaliq if he wanted to take something with him as he chased the intruders. According to Ms. Wilder, Khaliq replied: "No, because it does not have any bullets in it anyway." Khaliq says that he does not remember Fairburn saying anything as he left to pursue the invaders.

Officers Cook and Gross then questioned Fairburn, who explained that four armed males had entered the home, but that her child had not been abducted. Officer Cook then inquired about a gun. Fairburn initially denied having a gun or offering Khaliq a gun. Officer Gross claims that Fairburn then changed her story, stating that she had tried to hand Khaliq a toy gun. Fairburn acknowledges discussing her son's toy gun with the officers, but claims that she did not handle the gun until after Khaliq left.

After Khaliq lost track of the invaders, he came home, "flying in" to his driveway and found Officers Cook and Gross in the front yard. Khaliq admits that he was angry and frustrated, approached the officers, and asked the officers why they were not "chasing after the criminals." Khaliq admits that when he first started talking to the officers, he was "kind of loud." Officer Gross claims that both officers repeatedly advised Khaliq that they needed to pat him down, and that they instructed Khaliq to put his hands on his car. When asked during his February 23, 2005, deposition whether he had been instructed to put his hands on his car or to submit to a pat-down, Khaliq denied recollection:

> Q: Did Officer Cook then ask to pat you down?
>
> A: I can't recall him asking me that.
>
> Q: Did either of the officers ask you to put your hands on the car so you could be patted down?
>
> A: No, I can't recall that.
>
> Q: Now, you just can't recall today because you're not sure if it happened, or you don't believe that happened?
>
> A: I just—I can't recall them saying turn around, put your hands on the car . . .
>
> . . .
>
> Q: Do either of the officers order you to put your hands on the car?
>
> A: I can't recall. I just recall them just saying where's the gun. . . .
>
> . . .
>
> Q: How's your anger level at this time? You said you were frustrated before when you were in the car and talking on the cell phone and now you get [home]. What's going through your mind at this point?
>
> A: Just basically I was just, like I said, I was upset that the cop had called back in the manner in which he was talking to me on the phone. I had lost contact with [the intruders]. Then I get back home and there's two cops asking me about a gun, you

> know, that I didn't have. And everything went—like I said, the time, it just seemed like everything went so fast, it just—you're asking me did they ask to pat me down, it just—the next thing I knew, as soon as I said no and a couple words are going back and forth, I'm getting sprayed with mace.
>
> Q: So the officers did not give you several, three, four direct orders to place your hands on the car to be patted down?
>
> A: I can't recall.

Later, Khaliq gained recollection in his July 22, 2006, affidavit: "I never refused to submit to a pat down search, to place my hands on a car, or to spread my legs. I am certain that no police officer either repeatedly asked or ordered me to put my hands on the car or to be patted down . . . ." Khaliq claims that he never refused to do anything the officers requested of him.

At some point during the course of events, all agree that Officer Cook asked Khaliq where his gun was, at which point Khaliq became angry and admits to arguing with the officers about whether or not he had a gun: "before I know it, I'm yelling back and forth, they're yelling back at me, where's the gun, where's the gun." Khaliq also admits to cursing at the officers, saying "this is fucking crazy" and that he "didn't have a fucking gun." After debating with the officers about whether or not he was carrying a gun, Khaliq reached for his jacket. Khaliq claims that he opened his coat as a non-threatening gesture to show the officers that he was not carrying a gun. Officer Gross, however, claims that Khaliq quickly stepped back and began to lift his jacket, which action the officers interpreted as an aggressive gesture. In response, the officers sprayed Khaliq with pepper spray, shoved him to the ground, and handcuffed him. Khaliq was arrested for disorderly conduct.

Officer Minton did not arrive on the scene until after Khaliq had been sprayed and was on the ground.

Following these events, Khaliq filed suit under 42 U.S.C. § 1983 against Officers Gross, Cook, and Minton, and against the City of Newark. Khaliq brought an Equal Protection selective-prosecution claim on the ground that he was treated differently than his similarly situated white girlfriend; a Fourth Amendment unreasonable-seizure claim on the ground that there was not probable cause for his arrest; a malicious-prosecution claim under the Fourth and Fourteenth Amendments; and arguably a Fourth Amendment claim for excessive use of force. Khaliq argues that the City of Newark is liable because the constitutional violations he alleges were caused by unconstitutional policies and customs of the City; namely, a failure to train and supervise its officers adequately, and a failure to discipline or investigate officers following past instances of discrimination. Khaliq also brought a number of state-law claims, seeking to take advantage of the court's supplemental jurisdiction.

In response, the defendants filed a motion for summary judgment on all of Khaliq's claims except that for excessive use of force. Khaliq filed a motion in opposition, additionally noting his observation that the defendants had not moved for summary judgment on his excessive-force claim. In reply, the defendants argued that if Khaliq had intended to plead excessive force, summary judgment in their favor was appropriate on that claim as well. Khaliq subsequently moved to strike this portion of the defendants' reply, or, in the alternative, to file a sur-reply to oppose summary judgment on his excessive-force claim.

The district court denied Khaliq's motion to strike and granted the defendants' motion for summary judgment. The court concluded that Khaliq had failed adequately to plead a claim for excessive use of force, and alternatively concluded that Khaliq's excessive-force claim could not survive summary judgment. The court also granted the defendants summary judgment on Khaliq's selective-prosecution claim, finding that Khaliq and Fairburn were not similarly situated and, alternatively, that Khaliq could not establish a discriminatory purpose because the officers had questioned both Khaliq and Fairburn about the gun and only focused on Khaliq after he had become difficult.

The court also granted summary judgment on Khaliq's unreasonable-seizure claim, finding that, relying solely on Khaliq's account of what happened, the officers had probable cause to arrest. The court noted that Khaliq had admitted to yelling and cursing at the officers when they questioned him about the gun, and to opening his coat to show the officers that he was not carrying a firearm. The court reasoned that the officers had probable cause to arrest Khaliq for disorderly conduct based on his disregard for the law because they "had a reasonable belief that Plaintiff was acting disorderly, which consists of recklessly causing inconvenience, annoyance, or alarm to another by: (1) engaging in fighting, in threatening harm to persons or property, or in violent or turbulent behavior." The court also granted summary judgment on Khaliq's malicious-prosecution claim, based on its finding that the officers had probable cause to arrest.

Finally, the district court granted summary judgment in favor of the City of Newark on the ground that Khaliq had failed to demonstrate that his alleged injuries were caused by an

unconstitutional City custom or policy. The court concluded that Khaliq had failed to demonstrate a clear pattern of unconstitutional activity in citing apparently isolated and responded-to instances of discrimination by individual police officers, and rejected Khaliq's arguments that the City failed to train, supervise, investigate, and discipline its officers adequately. The court also concluded that Khaliq had failed to show that the officers' actions represent any City policy.

On appeal, Khaliq argues that the district court did not correctly apply the standard for summary judgment; that the district court erred in holding that he had not adequately pled a claim for excessive use of force; that he has presented genuine issues of material fact as to all of his federal claims and that summary judgment was improper; and that the district court erred in declining to exercise supplemental jurisdiction over his remaining state-law claims.

Because we conclude that Khaliq has presented no genuine issue of material fact regarding his federal claims,[1] we affirm the district court's grant of summary judgment. The police had probable cause to arrest Khaliq for disorderly conduct. Although Khaliq claims that he was not hostile or uncooperative toward the officers, it is clear from Khaliq's deposition testimony that he was being argumentative and uncooperative inasmuch as he admits to angry yelling and cursing at the officers while carrying on a prolonged debate about whether or not he had a gun. Moreover, Khaliq admits that he opened his coat in a vigorous gesture toward the police officers. These circumstances are sufficient to "warrant a prudent man in believing that the [arrestee] had committed

---

[1]We reach no conclusions regarding the merits of Khaliq's state-law claims.

or was committing an offense." *Diamond v. Howd*, 288 F.3d 932, 936-37 (6th Cir. 2002); *see also*

Ohio Rev. Code § 2917.11 ("No person shall recklessly cause inconvenience, annoyance, or alarm

to another by . . . : (1) Engaging in fighting, in threatening harm to persons or property, or in violent

or turbulent behavior."). Under Ohio law, vulgar language accompanied by aggressive behavior can

be sufficient to support a disorderly conduct conviction based on "turbulent behavior." *See*

*Middletown v. Carpenter*, No. CA2006-01-004, 2006 WL 1972061, at *3 (Ohio Ct. App. 2006); *see*

*also Thacker v. Lawrence County*, 182 F. App'x 464, 469-70 (6th Cir. 2006) (concluding that

officers had probable cause to arrest for "turbulent behavior" in light of arrestee's admissions that

he had "raised his voice . . . was swearing loudly and did not cease this behavior after the deputies

requested that he do so."). Given Khaliq's behavior, the officers had probable cause to arrest him

for disorderly conduct, and his arrest was therefore not an unreasonable seizure in violation of the

Fourth Amendment.

Because the district court correctly concluded that the officers had probable cause to arrest,

Khaliq's claim for malicious prosecution necessarily fails. *See Thacker v. City of Columbus*, 328

F.3d 244, 259 (6th Cir. 2003) ("Although this Court has yet to resolve the elements of a federal

malicious prosecution claim, it is clear that a plaintiff must show, at a minimum, 'that there was no

probable cause to justify [his] arrest and prosecution.'" (*citing Darrah v. City of Oak Park*, 255 F.3d

301, 312 (6th Cir. 2001))).

Khaliq has also failed to present a genuine issue of material fact regarding whether or not the officers used excessive force in his arrest.[2] As explained above, Khaliq admits to angry yelling and cursing at the officers, carrying on a prolonged and heated debate about whether or not he had a gun, and vigorously opening his coat in a gesture toward the police officers. Khaliq suffered a brief dose of pepper spray, was knocked to the ground, and was handcuffed. He does not claim that he was maced for an excessively long amount of time, as the plaintiff alleged in *Adams v. Metiva*, 31 F.3d 375, 384-85 (6th Cir. 1994), on which case Khaliq relies. Based on the version of events admitted by Khaliq, and construing the evidence in his favor, the officers' use of force was objectively reasonable under the circumstances. *See Graham v. Connor*, 490 U.S. 386, 395-96 (1989).

There is also no genuine issue of material fact regarding whether Khaliq was subjected to selective enforcement in violation of the Equal Protection Clause. Most importantly, Khaliq cannot demonstrate that he was treated differently than someone to whom he was similarly situated, as is required for a selective-enforcement claim based on race. *See Farm Labor Org. Comm. v. Ohio State Highway Patrol*, 308 F.3d 523, 533-34 (6th Cir. 2002). A claimant alleging selective enforcement of facially neutral criminal laws must demonstrate that the challenged law enforcement practice "had a discriminatory effect and that it was motivated by a discriminatory purpose." *Id.* (citing *Wayte v. United States*, 470 U.S. 598, 608 (1985)). "To establish a discriminatory effect in a race case, the claimant must show that similarly situated individuals of a different race were not

---

[2]Consequently, whether or not the district court erred in concluding that Khaliq failed to adequately plead an excessive-force claim is immaterial.

prosecuted." *Id*. (citing *United States v. Armstrong*, 517 U.S. 456, 465 (1996)); *see also Boone v. Spurgess*, 385 F.3d 923, 932 (6th Cir. 2004) ("In order to make out an equal protection claim on the basis of selective enforcement, a plaintiff must demonstrate that someone similarly situated but for the illegitimate classification used by the government actor was treated differently."). Although Khaliq argues that he was similarly situated to his white girlfriend, who was not arrested, Khaliq was yelling, cursing, and making gestures perceived to be threatening, while his girlfriend was not.

Because Khaliq has failed to demonstrate a constitutional violation, his § 1983 claims against the City necessarily fail. To succeed on a municipal liability claim, Khaliq must demonstrate both: (1) the deprivation of a constitutional right, and (2) that the City is responsible for that violation. *See Doe v. Clairborne County*, 103 F.3d 495, 505-06 (6th Cir. 1996) (citing *Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992)). His failure to demonstrate a constitutional violation dooms his claim at step one.

Finally, because Khaliq's federal claims cannot survive summary judgment, it was proper for the district court to decline to exercise supplemental jurisdiction over his state-law claims. *See* 28 U.S.C § 1367(c)(3); *Saglioccolo v. Eagle Ins. Co.*, 112 F.3d 226, 233 (6th Cir. 1997) (citing *United Mine Workers v. Gibbs*, 282 U.S. 715, 726 (1966)).

For the foregoing reasons, we affirm the district court's grant of summary judgment in favor of the defendant City and officers.