**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 11a0183n.06

**No. 09-2171**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| KENNETH HOWARD, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| WAYNE COUNTY SHERIFF'S OFFICE, | ) | EASTERN DISTRICT OF MICHIGAN |
| WAYNE COUNTY, DEPUTY FRANK | ) | |
| WOOD, and DEPUTY JOHN HARDIE, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

FILED
Mar 29, 2011
LEONARD GREEN, Clerk

Before: DAUGHTREY, CLAY, and WHITE, Circuit Judges.

MARTHA CRAIG DAUGHTREY, Circuit Judge. Plaintiff Kenneth Howard appeals from the order of the district court granting summary judgment to the defendants in this civil rights action charging them with arresting Howard without probable cause and using excessive force in making the arrest. Howard filed his original complaint *pro se* in state court, raising various state tort and constitutional claims against Wayne County, the Wayne County Sheriff's Office, and two Wayne County Deputy Sheriffs, Frank Wood and John Hardie. After removal to federal court, the district judge construed some of the allegations in the complaint as raising federal constitutional claims and treated the action as one arising under 42 U.S.C. § 1983.

Following responsive pleadings and a period of discovery, the district court granted the defendants' motion for summary judgment, ruling that the plaintiff had been subject to a constitutionally valid arrest for obstructing an officer in the performance of his duties and that the use of pepper spray did not constitute excessive force in this case because Howard was actively resisting arrest at the time it was used. The district court therefore dismissed the claims against the deputies and ruled that the County and the Sheriff's Office were not subject to suit under the circumstances in the record.

We agree that the record fails to support the complaint against the County and that there is no legal basis for the claim against the Sheriff's Office. We therefore affirm that portion of the district court's judgment. Based on the current Michigan statute and the cases interpreting it, we conclude that the district court's decision to dismiss Howard's claims of false, malicious, and unconstitutional arrest must also be affirmed. For the reasons set out below, however, we find that the court's decision dismissing the excessive-force claim is not supported by the record and must be reversed.

**FACTUAL AND PROCEDURAL BACKGROUND**

In ruling upon the defendants' motion for summary judgment, the district court succinctly recounted the facts pertinent to this dispute in its memorandum opinion:

> This lawsuit arises from Plaintiff's arrest by Defendant Frank Wood, a Wayne County Sheriff's Deputy, in the lobby of the Coleman A. Young Municipal Center [ ] in Detroit. According to defendants, Plaintiff, a former employee of the City of Detroit working in the [municipal building], elbowed Wood in the

stomach as he proceeded through the employee entrance security checkpoint on the morning of August 8, 2006. When Wood ordered that Plaintiff stop, Plaintiff allegedly responded with a profane statement to the effect that Wood needed to get out of his way. Wood then informed Plaintiff multiple times that he was under arrest but Plaintiff refused to submit. During this time Wood alleges that Plaintiff made more profane statements and began to walk toward the elevators. In response, Wood called for a backup and Defendant John Hardie, also a Wayne Country Sheriff's Deputy, appeared at the scene.

Plaintiff, meanwhile, disputes Wood's description of these events. Plaintiff maintains that he politely stated "excuse me" as he entered the [municipal building] and waited for other employees and Wood to respond before walking through the security checkpoint. Plaintiff denies making physical contact with Wood and using profanity that morning. After Plaintiff made it half-way to the elevators, however, Wood demanded that he stop and come back. Plaintiff alleges that Wood asked if Plaintiff had bumped him. Plaintiff apologized if he had in fact bumped Wood, but also explained that he had said "excuse me." This discussion continued for a few moments before Wood allegedly stated, "I don't know you, so you can't say I'm giving you a hard time." Wood then indicated that Plaintiff was under arrest and ordered that Plaintiff turn around and place his hands behind his back. As Wood reached for Plaintiff's hand, Plaintiff claims to have put up his hands in surprise. Plaintiff admits that Wood ordered him to submit to arrest four or five times but claims that, during this exchange, Wood initially refused to indicate why he was being arrested. After Plaintiff asked to know the charges multiple times, Wood indicated that he was being arrested for assault. Plaintiff then asserts that he and Wood walked together towards the elevators in a joint effort to get out of the way of other employees in the [municipal building]. As they walked, Plaintiff heard Wood call for backup and a female onlooker informed Wood that she had notified the command station that he needed assistance. Plaintiff admits that he yelled at the woman, called her "Goldie Locks," and told her to mind her own business.

Once Hardie arrived as backup, Wood sprayed Plaintiff with pepper spray, took him to the ground, and placed him in handcuffs. Plaintiff asserts that Wood's take-down maneuver choked him and caused him to blackout as he was being handcuffed. Once Plaintiff was back on his feet, Hardie led him to a jail facility located inside the [municipal building]. Plaintiff was ultimately charged with assaulting an officer, being a disorderly person, and refusing the lawful command of an officer. Plaintiff was acquitted of all charges by a jury in 2007.

> Based on these events, Plaintiff acting *pro se*, filed the present action against Wood, Hardie, the Wayne County Sheriff's Department, and Wayne County in Wayne County Circuit Court. Plaintiff's complaint presents six claims: (I) violation of his rights as protected by the Michigan Constitution; (II) assault and battery and excessive force; (III) unlawful arrest in violation of the Michigan Constitution; (IV) false arrest, false imprisonment, and intentional infliction of emotional distress; (V) false imprisonment; and (VI) malicious prosecution in violation of the Fifth and Fourteenth Amendments of the United States Constitution. Defendants removed the action to this Court . . . on the basis of federal question jurisdiction.

*Howard v. Wayne County Sheriff's Office*, No. 08-13501, 2009 WL 2849135, at **1-2 (E.D. Mich. Sept. 1, 2009) (citations omitted).

Following discovery, the plaintiff voluntarily dismissed his two causes of action premised upon violations of the Michigan Constitution. The defendants then filed a motion for summary judgment in their favor on each of the remaining claims in Howard's complaint. Cognizant of the leniency to be accorded *pro se* pleadings, however, the district court, prior to ruling upon the summary judgment motion, interpreted Howard's state-law tort claims to raise federal constitutional issues pursuant to 42 U.S.C. § 1983. Nevertheless, the court concluded that under applicable Michigan law, defendant Wood had probable cause to arrest Howard for obstruction after the plaintiff refused to comply with the order to place his hands behind his back.

Furthermore, the district court granted summary judgment to the defendants on Howard's excessive-force claim, despite agreeing with the plaintiff that genuine issues of material fact remained regarding the necessity of using the degree of force employed by

Wood and, derivatively, by Hardie. The court concluded, however, that "[t]he precise contours of the right to be free from the use of excessive force remain unclear where an individual offers some form of resistance to an arresting officer." *Howard*, 2009 WL 2849135, at *7. Because the district court therefore deemed the right asserted by Howard as not "clearly established," the court found Wood and Hardie "shielded from liability by qualified immunity." *Id.*

The district court also dismissed all claims against defendants Wayne County and the Wayne County Sheriff's Department. Quoting *Sumner v. Wayne County*, 94 F. Supp.2d 822, 827 (E.D. Mich. 2000), the court recognized that because the sheriff's department "'is merely a department within the jurisdictional authority of Wayne County,' it is not an entity capable of being sued and must be dismissed." *Howard*, 2009 WL 2849135, at *3 (citation omitted). The court also granted summary judgment in favor of the county itself because the plaintiff made no allegation and offered no evidence to suggest "that Wood's alleged use of excessive force was caused by a Wayne County policy or failure to train," *id.* at *7, n.4, as required by *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

**DISCUSSION**

We review *de novo* the grant of summary judgment by a district court. *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006). Summary judgment "should be rendered

if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). No genuine issue of material fact exists when, assuming the truth of the non-moving party's evidence and construing all inferences from that evidence in the light most favorable to that party, the movant is entitled to judgment as a matter of law. The district court's failure to decide the excessive-force issue under this principle constitutes reversible error in this case.

### Arrest Without Probable Cause

Howard first contends that defendant Wood arrested him without probable cause and thus violated his constitutional right to be free from unreasonable seizures. In order to state successfully such a claim under 42 U.S.C. § 1983, Howard "must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)) (additional citation omitted). Neither party in this case disputes the fact that Wood, at the time he arrested the plaintiff, was acting under color of state law as a uniformed deputy of the Wayne County Sheriff's Department. Instead, Howard, in presenting this claim to the panel on appeal, asserts only that he adduced sufficient evidence to create a genuine issue of material fact regarding Wood's justification for arresting him in the first place. Specifically, the plaintiff asserts that Michigan law

provides that an individual cannot be subject to arrest for "obstructing" an officer in the performance of that official's duties unless the arrestee has used or threatened physical force or has knowingly failed "to comply with a lawful command." Mich. Comp. Laws Ann. §§ 750.81d(1) and (7)(a) (2004). According to Howard, because he offered a version of events that would not have justified Wood in making any arrest, the defendant deputy's directive that the plaintiff place his hands behind his back and submit to an arrest was not "a lawful command."

As highlighted by Howard, the relevant Michigan statute does indeed seem to require a "lawful" command as a condition precedent to an arrest for *obstruction* of a person performing his or her duties. Despite the seemingly unambiguous language crafted by the Michigan legislature, however, Michigan state courts have interpreted the wording of section 750.81d(7)(a) in a manner that allows arrests in situations never contemplated by the state's lawmakers. In *People v. Mitchell*, No. 278801, 2008 WL 4276542 (Mich. App. Sept. 16, 2008), for example, the Michigan Court of Appeals broadly applied language from another case from that same court to conclude that section 750.81(d)(1) does "not includ[e] the requirement . . . that the underlying arrest be legal." *Id.* at *2 (citing *People v. Ventura*, 686 N.W.2d 748, 750-56 (Mich. App. 2004)).

In *Ventura*, however, the Michigan Court of Appeals examined a situation in which the defendant had been arrested for *resisting* arrest under Mich. Comp. Laws Ann. § 750.81d, not for *obstructing* the performance of official duties. *See Ventura*, 686 N.W.2d

at 752 ("A person may not use force to *resist* an arrest made by one he knows or has reason to know is performing his duties regardless of whether the arrest is illegal. . . ." (emphasis added)). Because section 750.81d(7)(a) explicitly defines "obstruction," but not "resisting," to include "a knowing failure to comply with a lawful command," it seems clear that the Michigan legislature sought to differentiate between the admittedly related concepts of "resisting arrest" and "obstructing a person performing official duties."

Were this court called upon to interpret Michigan law on a blank slate, it might well choose to adhere to the strict language of *Ventura* without the imprecise, expansive gloss added to that case by *Mitchell*. However, we are not in a position to reinterpret the Michigan judiciary's evaluation of Michigan statutory law. We must, instead, defer to state-court precedent that equates "resistance" and "obstruction" under section 750.81d(1), despite the statute's explicit differentiation of the concepts.

In any event, the academic exercise of parsing the statutory language is of no help to Howard in this case. The incident report prepared by defendant Wood after the seizure of the plaintiff clearly indicates that Howard was arrested for "assault upon [a] police officer," "*resist[ing]* arrest," and "disorderly conduct." The theoretical distinctions applicable to arrests for "obstruction" are thus irrelevant in this matter and Howard was required to comply with Wood's request to place his hands behind his back regardless of whether the defendant deputy sheriff had probable cause to voice such an order. The district court did

not, therefore, err in granting summary judgment to the defendants on Howard's claim of false arrest/malicious prosecution.

### Excessive Force/Qualified Immunity

Howard also alleges that his right to be free from the use of excessive force was violated when Wood arrested him. The district court agreed with the plaintiff that his version of the events leading to his arrest would support the conclusion that Wood used unnecessarily excessive force in subduing the plaintiff. *See Howard*, 2009 WL 2849135, at *6 ("Plaintiff denies making physical contact with Wood at any time, denies using profanity, denies yelling at Wood, and denies walking away from Wood to avoid arrest. Viewing these facts in the light most favorable to Plaintiff, Wood's conduct might be found to have constituted excessive force." (citation omitted)). Indeed, in the face of a claim of exercise of excessive force, a court must pay "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989).

Here, taking each fact in the light most favorable to the plaintiff, the record shows that Howard walked into the municipal building where he worked, moved past defendant Wood after saying "excuse me," and was accosted by the deputy sheriff, who, after a short discussion, informed Howard that he was under arrest for an unspecified transgression.

Wood reached to grab Howard's hand, but Howard jerked his hands away in surprise and asked several times to know the charge against him. Even after Wood eventually responded that he was arresting Howard for assault, the plaintiff did not exhibit any signs of verbal or physical aggression toward the defendant. The plaintiff did, however, in the face of continued orders to place his hands behind his back, disobey the directives and continue discussing (peacefully) why Wood should not arrest him. After Deputy Hardie arrived on the scene to offer assistance, Wood then, without provocation, sprayed Howard in the face with pepper spray, placed his hands and arms around the plaintiff's neck, and forcefully took Howard to the ground, landing atop the plaintiff.

Despite finding that such actions amounted to a deprivation of Howard's constitutional right to be free from the use of excessive force, the district judge further concluded that the right was not "clearly established" because "[t]he precise contours of the right to be free from the use of excessive force remain unclear where an individual offers some form of resistance to an arresting officer." *Howard*, 2009 WL 2849135, at *7. The district court thus found "Wood shielded from liability by qualified immunity and defendants . . . entitled to summary judgment on Plaintiff's excessive force claim." *Id.* (footnote omitted).

Qualified immunity from liability is available to government officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

In other words, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Although "the exact action in question [need] not [have] previously been held unlawful by a court," the plaintiff must still "show the prior articulation of a prohibition against the type of excess force exerted here." *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 901-02 (6th Cir. 2004).

In reaching its conclusion that the defendant deputies were entitled to qualified immunity, the district judge cited three Sixth Circuit cases involving the use of pepper spray in an attempt to elucidate the purported lack of uniformity in such decisions occasioned by an arrestee's varying levels of resistance to authority. *Howard*, 2009 WL 2849135, at *7 (citing *Greene v. Barber*, 310 F.3d 889, 898 (6th Cir. 2002); *Abdul-Khaliq v. City of Newark*, 275 F. App'x 517 (6th Cir. 2008); *Vaughn v. City of Lebanon*, 18 F. App'x 252 (6th Cir. 2001)). In two of those cited cases, however, the plaintiffs admitted, or did not dispute, engaging in incendiary actions that served to inflame already-volatile situations. Greene, for example, called the arresting officer "an asshole" and "really stupid," *see Greene*, 310 F.3d at 892-93, and was "physically" and "verbally resisting arrest in an aggressive manner." *Id.* at 899. Abdul-Khaliq also admitted to being verbally abusive toward the arresting officers, as well as "open[ing] or rais[ing] his coat in a potentially threatening manner" before being sprayed with pepper spray. *Abdul-Khaliq*, 275 F. App'x at 518.

- 11 -

By contrast, Vaughn, like Howard, denied engaging in any actions that would justify arresting officers using pepper spray to subdue him. Because belief in the veracity of Vaughn's accounts of his encounters with the police and their pepper spray canisters would lead to the conclusion that excessive force had been used to take him into custody, we reversed the district judge's grants of qualified immunity to those defendants who could be connected to pepper-spraying by Vaughn's testimony or by other evidence. *See Vaughn*, 18 F. App'x at 266-70.

Interestingly, in one such incident, Vaughn even "admitted to 'jerk[ing] one hand away' as one of the officers attempted to handcuff him." *Id.* at 268. This court nevertheless reversed the district court's grant of summary judgment for the defendant on a qualified immunity claim, noting that "there is a question of fact whether [Vaughn] posed an immediate threat to the safety of the officers or others, or whether the officers interpreted his movement as an attempt to resist arrest." *Id.* Similarly, in this case, although Wood claimed that Howard pulled his arm away from the deputy when Wood was attempting to arrest him, the plaintiff claims merely "to have put up his hands in surprise." *Howard*, 2009 WL 2849135, at *1. Such testimony again creates a genuine issue of material fact for a jury to consider in determining whether the response of Deputy Wood was excessive in light of the plaintiff's statements and actions.

There is no dispute that "[t]he use of a chemical weapon such as pepper spray is not per se unreasonable." *Vaughn*, 18 F. App'x at 266. Nevertheless, it is also true that

"[w]e have previously found that the use of a chemical weapon, if unreasonable in manner, may constitute excessive force." *Id.* (citing *Adams v. Metiva*, 31 F.3d 375, 384 (6th Cir. 1994)). Thus, by the time of Howard's encounter with Wood in August 2006, the principle of law was already clearly established that use of pepper spray on an arrestee who was not accused of a serious crime, was not posing an immediate threat to the safety of the officer or others, and was not actively resisting arrest or seeking to flee is constitutionally unreasonable.

Crediting the testimony of the plaintiff, as we must, Howard was neither belligerent nor violent in any of his dealings with Deputy Wood. Additionally, evidence adduced by the plaintiff suggested that he had never resisted arrest but merely attempted to ascertain the reason for his detention. In such a situation, a jury could reach the conclusion that use of pepper spray against the plaintiff constituted excessive force. The district court thus erred in granting summary judgment to defendants Wood and Hardie[1] based upon the doctrine of qualified immunity.

---

[1]The district judge found Hardie protected by qualified immunity as to Howard's excessive force claim because "the claim against Hardie is based on Hardie's failure to prevent Wood from using excessive force," *Howard*, 2009 WL 2849135, at *7 n.4, and if Wood did not violate a clearly-established right, Hardie's inaction also could not lead to section 1983 liability. On the other hand, a finding that Wood did indeed violate Howard's right to be free from the application of excessive force during an arrest could also lead to liability for Hardie on the plaintiff's derivative claim.

**CONCLUSION**

We find no merit to the remaining issues raised on appeal. The district court did not err in dismissing what Howard labels "federal tort claims," because Howard did not identify any federal actors with regard to those claims. Nor can the district court be reasonably accused of judicial bias toward Howard. In fact, the district judge accorded the *pro se* plaintiff every benefit of the doubt when interpreting his pleadings and ruling on motions. Finally, we reject Howard's claim that the district court erred in granting summary judgment to the defendants without ensuring that they had responded adequately to Howard's discovery requests, because he never filed a motion to compel discovery. Moreover, in light of our order of remand, the plaintiff will have additional opportunities for discovery prior to the commencement of any trial.

Because we conclude that the plaintiff established sufficient evidence to raise a genuine issue of material fact regarding whether defendants Wood and Hardie used, or permitted the use of, excessive force in his arrest, we find it necessary to REVERSE the judgment of the district court on the claim of excessive force and REMAND the case for further proceedings on that claim. In all other respects, the district court's judgment is AFFIRMED.

**HELENE N. WHITE, Circuit Judge** (concurring).  I join in the majority's reversal of the district court's grant of summary judgment to defendants on Howard's excessive force claim and its discussion of the qualified-immunity issue.  I also join in the majority's conclusion that the district court did not err in granting summary judgment to defendants on Howard's claim of false arrest/malicious prosecution.